UNITED STATES of America, Plaintiff-Appellee,

v.

ONE 1972 CHEVROLET CORVETTE, Defendant-Appellant.

No. 80–1074.

United States Court of Appeals, First Circuit.

Argued May 5, 1980.

Decided July 18, 1980.

Gerald Alch, Boston, Mass., for defendant-appellant.

Bruce A. Singal, Asst. U. S. Atty., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This appeal from a summary judgment enforcing the forfeiture of a motor vehicle presents the question whether the use of an automobile to transport its owner to a prearranged meeting for the collection by him of monies due from a prior transaction involving the sale and purchase of drugs by other persons constitutes "facilitation" of a sale within the meaning of the forfeiture provisions of the Drug Abuse Prevention and Control Act of 1970, Pub.L. 91–513, Title II, § 511(a)(4), 84 Stat. 1276 (1970), 21 U.S.C. § 881(a)(4).

Edward Simard is the owner of the 1972 Chevrolet Corvette which is the subject of this forfeiture action. From February 22, 1979, to April 4, 1979, Simard engaged in a conspiracy with James DeLorenzo, Anthony Serrichio, and several other persons to sell and possess with intent to sell lysergic acid diethylamide (LSD). During the course of the conspiracy, William McDonald, a special agent of the Drug Enforcement Administration, negotiated several LSD purchases with Serrichio. From his conversations with Serrichio, McDonald believed that the LSD supply was located in San Francisco,

DeLorenzo was the New York source, and Simard, the banker. On April 3, 1979, DeLorenzo flew from New York to San Francisco and returned the following day. He was arrested upon arrival at the JFK Airport with a large quantity of LSD. On April 5, he agreed to cooperate with the government. He placed a monitored phone call to Simard in Massachusetts. The conversation which ensued implicated Simard in the conspiracy. On April 9, DeLorenzo phoned Simard and arranged to meet him at Logan Airport on April 12, 1979. At the airport, DeLorenzo gave Simard an envelop containing cash.[1] Federal agents arrested Simard before he returned to his car. Simard was indicted on two counts of conspiracy and possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B), and 18 U.S.C. § 2.[2] Tried in the United States District Court for the Southern District of New York, Simard was found guilty on both counts at a jury-waived trial. The United States Court of Appeals for the Second Circuit affirmed the conviction.

The United States Attorney for the District of Massachusetts then instituted a proceeding in rem to enforce the forfeiture of the defendant vehicle because Simard used it in going to Logan Airport on April 12. The government charged that the vehicle was used or intended to be used to facilitate the sale and possession of LSD and thus was subject to forfeiture under 21 U.S.C. § 881(a)(4). The United States District Court for the District of Massachusetts granted summary judgment for the government. This appeal ensued.

The government's theory of forfeiture is predicated on the proposition that, as part of the overall drug scheme, Simard intended to "relinquish or transfer his construc-

1. The record refers at one point to $38,000, at another to $28,000.

2. 21 U.S.C. § 841(a)(1) makes unlawful the manufacture, distribution, dispensing or intent to manufacture, distribute or dispense a controlled substance. 21 U.S.C. § 841(b)(1)(B) provides for penalties for violations of § 841(a)(1). Under 18 U.S.C. § 2, one who

"aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States is punishable as a principal. "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

tive possession [of the LSD shipment] upon being reimbursed the $28,000 by DeLorenzo." Although actual commission of any crime involving these narcotics was impossible since the drugs had already been seized by federal agents and the conspiracy to distribute them had ended, the government contends that Simard's intention in driving to the airport brings the automobile within the forfeiture provisions of the Comprehensive Drug Abuse Prevention and Control Act. We turn to the statute.

The act makes it a crime "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).

LSD is a controlled substance within the ambit of the statute, 21 U.S.C. § 802(9)(C). Forfeiture of vehicles is authorized by 21 U.S.C. § 881(a)(4) which provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2). . . .

Paragraphs (1) and (2) provide for forfeiture of "[a]ll controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter," 21 U.S.C. § 881(a)(1), and "[a]ll raw materials, products, and equipment" used or intended for illegal use. 21 U.S.C. § 881(a)(2).[3]

In determining whether Simard's intent to use the Corvette to transport his share of the proceeds subjected the vehicle to forfeiture under the statute, we note that not every involvement of an automobile with a drug transaction triggers forfeiture. Sub-

section 881(a)(4), by its terms, lays down a *per se* forfeiture rule only for transportation of certain items of contraband. In adding subsection 881(a)(6) in 1978, which subjects monies substantially involved in illicit drug transactions to forfeiture, Congress neither included a provision for forfeiture of vehicles transporting such monies nor amended subsection 881(a)(4) to explicitly include such transportation within that provision. Since intent to use a vehicle to transport proceeds of an illicit sale does not, *per se*, subject the vehicle to forfeiture, the key question is whether Simard intended to use his car "to facilitate the transportation, sale, receipt, possession, or concealment" of the LSD.

On two occasions, the Second Circuit has dealt with the facilitation clause of section 881(a)(4). In *United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421 (2d Cir. 1977) (hereinafter *Cadillac I*), two persons drove in the forfeited auto to a meeting to discuss a drug transaction. In upholding the government's right to the car, the court stated:

[W]e are loathe to make forfeiture depend upon the accident of whether dope is physically present in the vehicle. Its use to transport the peddler or his confederates to the scene of the sale or to a meeting where the sale is proposed is sufficient.

*Id.* at 426. The court found that the meeting to which the car had transported one of the defendants was "an integral part" of the drug conspiracy. *Id.* at 423. Thus, the court concluded the district court had erred in finding that the vehicle "had no direct or indirect relationship to the subsequent sales." *Id.*

In the other Second Circuit case, *United States v. One 1974 Cadillac Eldorado*, 575 F.2d 344 (2d Cir. 1978) (per curiam) (hereinafter *Cadillac II*), the court applied the test of *Cadillac I* and found an insufficient nex-

---

**3.** Also subject to forfeiture is property used or intended to be used as a container for such substances and materials, 21 U.S.C. § 881(a)(3); books, records, and other written materials used or intended to be used in violation of the statute, *id.* § 881(a)(5). Proceeds from the sale of controlled substances were made subject to forfeiture by the Psychotropic Substances Act of 1978, 21 U.S.C. § 881(a)(6).

us between the vehicle and a heroin sale to justify forfeiture. In *Cadillac II*, the facts were as follows. DEA agents set up a purchase of heroin from the owner of the car, one Willie E. Farrow. Farrow drove to the place of sale in a Valiant. As he prepared to make the sale in an alley, two things occurred.

> Farrow announced that he thought he had seen a police car, and a pink Cadillac pulled into the alley, tailed by an undercover DEA vehicle. Farrow walked over to the Cadillac, in which his wife and children were riding along with Lawrence Bailey, his brother-in-law; he leaned into the car to talk, and, according to one of the DEA agents making the buy (but not the other) and a DEA surveillance agent, was seen to reach into the car with his hand.

> Immediately thereafter, Farrow handed the heroin to Agent Burns, and Farrow and Bailey were arrested. Farrow asserted that his conversation with Bailey concerned a basketball game—for which he was dressed—to which he was to drive with Bailey; he insisted that he had already been in possession of the heroin for the sale at the Ontario Avenue address, and that the Cadillac had had nothing to do with the transaction. At the end of the government's case, charges against Bailey were dismissed.

*Id.* at 345. Although only Bailey drove to the sale site in the car, Farrow admitted he intended to depart in it after receiving payment for the drugs. The car, thus, was intended to be used to transport the dealer, as well as the proceeds, away from the site of the illegal transaction.

In urging us to treat the apparently broad interpretation of 21 U.S.C. § 881(a)(4), adopted by the *Cadillac I* court as dispositive of this case, the government loses sight of one significant factual distinction between *Cadillac I* and *Cadillac II*. In *Cadillac I* the car had an antecedent relationship to the transaction in question,

while in *Cadillac II*, even though the car was intended to be used to transport the proceeds of the sale, its only involvement was subsequent to that transaction. The approach followed by the Second Circuit, focusing on whether there is a "sufficient nexus" between the use of the vehicle and the illegal transaction, is consonant with Congress's statement that "it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity." [4] Psychotropic Substances Act of 1978, Joint Explanatory Statement of Titles I and II, 95th Cong., 2d Sess., *reprinted in* [1978] U.S. Code Cong. & Admin. News, pp. 9518, 9522. *See also United States v. One 1970 Buick Riviera*, 374 F.Supp. 277 (D.Minn.1973) (car used to transport dealer to airport from whence he embarked on drug-buying trip did not "facilitate" transaction). We find no decision upholding forfeiture on the basis of the facilitation clause in which there was not an antecedent relationship between the vehicle and the sale of narcotics. *See, e. g., United States v. One 1970 Pontiac GTO, 2-Door Hardtop*, 529 F.2d 65 (9th Cir. 1976) (finding facilitation where "evidence amply proved the motor vehicle used by [the seller] to further every aspect of the heroin transaction . . . except the physical transportation of the contraband"); *United States v. One 1973 Volvo*, 377 F.Supp. 810 (W.D.Tex.1974) (finding facilitation where car used to deliver money to pay for drug shipment and to pay for plane to transport drugs).

In this case, Simard was guilty of conspiracy and possession with intent to distribute controlled substances. His role was that of banker; he put up the money to purchase the drugs from the dealer. The only relationship the vehicle had with the transaction, however, was to transport Simard to a meeting at which he intended to receive the repayment of his "front money." In spite of the government's creative argument that Simard transferred constructive possession

---

4. The legislative history of 21 U.S.C. § 881(a)(4) is silent with respect to the intended scope of the facilitation clause.

of the LSD or freed it of an "encumbrance" upon receipt of his share of the proceeds, we do not find that this meeting was an "integral part" of the transaction. Were we to accept the government's argument, Simard's vehicle would also be subject to forfeiture if its only involvement had been to drive to the bank weeks later to cash a check received from DeLorenzo, since "title" to the LSD would not pass until the check cleared. We cannot believe Congress intended such minimal involvement to trigger forfeiture. Although we agree that DeLorenzo's promise to reimburse Simard may have been essential to the occurrence of the transaction, once the sale had been consummated, Simard's actual reimbursement was not necessary to "facilitate" that transaction. Thus, we conclude that because the Corvette bore no antecedent relationship to the sale of the LSD and Simard's intended use of the car to receive and convey his share of the proceeds would not have facilitated the sale, the car is not subject to forfeiture under 21 U.S.C. § 881(a)(4).[5]

*Reversed.*

---

5. In reaching this conclusion, we take no position on whether a vehicle is subject to forfeiture solely because it has been used to transport one participant in a drug conspiracy to the scene of an illicit transaction. *Compare United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421 (2d Cir. 1977), *with United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H. 1974).