UNITED STATES of America

v.

ONE 1981 DATSUN 280ZX.

Civ. A. No. 82–5782.

United States District Court,
E.D. Pennsylvania.

April 22, 1983.

Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for United States of America.

Jeffrey M. Miller, Nasuti & Miller, Philadelphia, Pa., for Joseph Esposito, Sr.

## MEMORANDUM

GILES, District Judge.

This case decides the fate of a 1981 Datsun 280ZX sports car which was seized by agents of the Drug Enforcement Administration ("DEA") on March 15, 1982 in King of Prussia, Pennsylvania. The government has instituted a complaint in forfeiture under the Controlled Substances Act, 21 U.S.C. §§ 801, 881(a) (1976). The car was allegedly used by Joseph Esposito, Jr. ("Esposito") to facilitate the attempted purchase of a controlled substance, phenyl-2-propanone ("P2P"). His father, Joseph Esposito, Sr. ("claimant"), contests the government's right to the car, claiming to be the innocent owner. An evidentiary hearing was held on February 17, 1982. The following constitutes my findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

1. Defendant car is a black 1981 Datsun 280ZX with a tan interior and a gold pinstripe. It is a turbo-charged sports car, capable of attaining a speed of 145 miles per hour. The car was purchased for $18,904.00 and has a present value of approximately $15,400.00.

2. Esposito is 38 years old and resides at 2336 South Hemberger Street, Philadelphia, Pennsylvania. His father is a 72 year old retiree who resides at 1712 McClellan Street, Philadelphia, Pennsylvania. The claimant has a heart condition.

3. The certificate of title for the Datsun lists the owner as Joseph Esposito, 1712 McClellan Street. There is no designation "Sr." or "Jr." on the title. The policy of insurance on the car names the insured in the same manner as the certificate of title.

4. The Datsun was purchased from Estate Datsun on September 3, 1981. Both Esposito and the claimant were present during the negotiations, which commenced in August. Esposito conducted most of the negotiations and actually selected the car, its color, equipment and features. The order form was signed by Esposito, but once again listed Joseph Esposito without the designation of "Sr." or "Jr." Esposito paid most of the purchase price in cash which was brought to Estate Datsun in a brown paper bag.

5. Claimant contends that the car was partially paid for with the proceeds of two loans made by Thomas Esposito, one of the claimant's other sons. Approximately $10,-000 of the purchase price was allegedly paid this way. The money was borrowed from the Boeing Vertol Employees Credit Union and listed the claimant as co-maker.· The first loan was made on October 24, 1980 for $6,700.00. After a default on this loan, it was refinanced in the amount of $6,108.54. The second loan was made on September 4, 1981, for $2,500.00. Claimant contends that the remainder of the purchase price was paid for out of his personal funds.

6. On September 17, 1981, claimant purchased a 1979 Oldsmobile for $6,610.00 also from Estate Datsun. Claimant and his wife each receive approximately $400.00 per month from social security. Their only other income is $500.00 per month in rent from a property located at 1846 South McKeon Street, Philadelphia, Pennsylvania.

7. The Datsun was kept at the claimant's home and was driven at times by different family members. However, the claimant has never driven the car.

8. Esposito has his own set of keys to the Datsun and it is referred to by his family members as "Joey's car." Esposito did not need permission to use the car—he could drive it at any time.

9. Pursuant to an on-going investigation, a DEA agent, posing as a chemical broker, met with Esposito in early March to discuss the sale of a quantity of P2P. On March 14, 1982, Esposito and Agent Miller met to discuss the terms of the deal. Esposito agreed to buy five gallons of P2P for $30,000 the next day. He remarked at that time that selling methamphetamine had been very lucrative, noting that he had bought everyone in his family a car, including "his" Datsun 280ZX.

10. On March 15, 1982, they met at the Sheraton Hotel in King of Prussia. Agent Miller entered the Datsun, wanting to see the money with which Esposito intended to purchase the P2P. Seeing a large quantity of $100 bills, Miller asked Esposito to drive him to his car so they could consummate the sale. Sometime after Miller alighted from the Datsun, other vehicles containing agents attempted to surround the Datsun. Esposito drove off and a chase ensued, during which Esposito threw money out of the window.

11. The Datsun was found abandoned in the King of Prussia Mall parking lot. Esposito was later found in a clothing store.

12. No drugs were found in the vehicle. Esposito was never arrested or prosecuted for the attempted drug purchase.

## II. DISCUSSION

 As a threshold issue, claimant argues that the government did not have the requisite probable cause for the forfeiture. In support of this argument, he points to the fact that no drugs were found in the car, that the sale was never consummated and that a prosecution was never brought relative to this transaction. However, these factors indicate that the claimant is not contending that the DEA agents lacked probable cause[1] for suspecting that Esposito used the Datsun to aid in a drug sale. Rather, claimant is alleging that the car did not have sufficient nexus with the transac-

---

1. The government does have the initial burden of proving probable cause in a forfeiture proceeding. *See, e.g., United States v. Fleming,* 677 F.2d 602, 609 (7th Cir.1982); *United States v. One 1977 Lincoln Mark V. Coupe,* 643 F.2d 154, 157 (3d Cir.1981), *cert. denied sub nom., Whitby v. United States,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981); *United States v. One 1976 Chevrolet Corvette,* 477 F.Supp. 32, 33 (E.D.Pa.1979); *United States v. One 1971 Chevrolet Corvette,* 393 F.Supp. 344, 346 (E.D. Pa.1975); *United States v. One 1971 Porsche Coupe,* 364 F.Supp. 745, 747 (E.D.Pa.1973). However, probable cause is given its ordinary meaning in this context. *See One 1977 Lincoln,* 643 F.2d at 156–57. *See also United States v. One 1979 Mercury Cougar XR–7,* 666 F.2d 228, 230 n. 3 (5th Cir.1982) (probable cause more than mere suspicion). The question here would be whether the DEA agents had probable cause to believe that the Datsun "facilitated" the aborted drug transaction. *See One 1977 Lincoln,* 643 F.2d at 157; *United States v. Kimak,* 624 F.2d 903, 905 (9th Cir. 1980). Given the use of the car to get to and from the three meetings and to show Agent Miller the money, probable cause existed.

tion so as to make the statute applicable. This argument misperceives the nature of section 881, the forfeiture statute invoked by the government.

In an attempt to deter widespread drug trafficking, Congress enacted the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq.* (1976). Section 881 of the Act, a broad forfeiture provision, provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

　(1) All controlled substances . . . .

. . . .

　(4) All conveyances, including aircraft, vehicles, or vessels, which are used, *or are intended* for use, *to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in* paragraph (1) or (2), . . . .

21 U.S.C. § 881(a) (emphasis added). Prior to the enactment of section 881, drug-related forfeitures were accomplished pursuant to 49 U.S.C. § 781, a general forfeiture provision. Section 881 is far broader than section 781. Specifically, the latter does not contain the "in any manner" language found in the former. The inference that arises from the addition of that phrase is that in enacting section 881, Congress intended to expand the government's right of forfeiture in drug cases. *See, e.g., United States v. One 1977 Cadillac Coupe DeVille,* 644 F.2d 500, 502 (5th Cir.1981); *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421, 424–25 (2d Cir.1977).

■ The statutory language quoted above belies claimant's position. Forfeiture is not limited to those situations where a sale is consummated or a prosecution brought. *See United States v. One 1976 Buick Skylark,* 453 F.Supp. 639, 642 (D.Colo. 1978) (prosecution not prerequisite for forfeiture). Nor does the language require drugs to be found in the vehicle. It is sufficient if the car is used to "facilitate" the purchase, sale or transportation of a controlled substance or if it is "intended" to be so used. The Third Circuit has defined "facilitation" by asking "whether there was a reasonable ground for belief that the use of the automobile made the sale less difficult and allowed it to remain more or less free from obstruction or hindrance." *One 1977 Lincoln,* 643 F.2d at 157; (quoting *United States v. One 1950 Buick Sedan,* 231 F.2d 219, 222 (3d Cir.1956)).

This case falls squarely within the statutory provision. The Datsun "facilitated" Esposito's presence at three separate meetings for the purpose of arranging and then consummating the sale. Agent Miller and Esposito discussed the sale in the car and Esposito showed Miller the money there as well. Thus, the Datsun provided shelter and privacy for this phase of the transaction. Finally, Esposito "intended" to use the Datsun to transport the P2P away from the scene of the sale.

A similar result was reached in *United States v. One 1977 Cadillac Coupe DeVille,* 644 F.2d 500 (5th Cir.1981). There, the vehicle was used to transport the seller and her accomplice to the house where the sale was to occur. However, the Cadillac never carried the cocaine, which arrived in a different car. The claimant challenged the forfeiture, arguing that since the cocaine was not transported in defendant car, there was no "facilitation." 644 F.2d at 501. The court disagreed, holding the transportation of the seller to the situs of the sale as sufficient for "facilitation." 644 F.2d at 503. In *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421 (2d Cir.1977), the vehicle was used only to transport the seller of cocaine to an initial meeting to arrange the transaction. However, at the conclusion of this meeting, no agreement was reached. The ultimate plan was formulated and agreed to at a subsequent meeting. The court held transportation to this one abortive meeting to be sufficient for forfeiture, calling it "an integral part of the drug selling conspiracy." 548 F.2d at 423. The Fifth Circuit has upheld the forfeiture of a car used to plan a large marijuana sale where it was driven in search of an airstrip on which the plane carrying the marijuana could land and in search of stor-

age space for the drug, a mobile home and other related items. The court observed: "Although the car never carried marijuana, we believe that its use in laying the groundwork for the marijuana operation establishes beyond peradventure the nexus required by the statute." *One Mercury Cougar XR–7,* 666 F.2d at 230. Given the broad language of section 881 and the liberal construction courts have accorded it, I conclude that the Datsun here had a sufficient nexus with the drug transaction so as to justify application of the forfeiture provision. *See also United States v. Fleming,* 677 F.2d 602, 610 (7th Cir.1982) (forfeiture upheld where party to a drug transaction arrived and intended to depart in car). *But see United States v. One 1972 Chevrolet Corvette,* 625 F.2d 1026, 1028–30 (1st Cir.1980) (not enough that car is used to pick up cash proceeds from an already consummated sale).[2]

■ Given the applicability of section 881, the claimant hinges entitlement to the Datsun upon the argument that he is the innocent and unaware owner of the car. Traditionally, the innocence of the owner was no defense to a forfeiture action. However, in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court, by way of *dicta,* carved out a limited exception to this rule.[3] Forfeiture might be constitutionally infirm if the owner "proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property . . . ." 416 U.S. at 689, 94 S.Ct. at 2094. Claimant argues that he owns the car and was unaware of its use for illegal purposes. Further, he allegedly warned his son not to "get in trouble" with

the vehicle, in light of his knowledge of Esposito's conviction on a counterfeit money offense ten years ago. However, claimant disavowed any knowledge of his son's recent involvement with drugs, and argues that by his warning, he did all that could reasonably be expected of him under *Calero-Toledo.* However, I do not reach this issue because the evidence is persuasive that claimant is not the actual owner of the Datsun and, therefore, has no standing to challenge the forfeiture.

■ In order to challenge a forfeiture, the claimant must own the *res. See, e.g., United States v. One 1945 Douglas C–54,* 604 F.2d 27, 28 (8th Cir.1979) *on appeal after remand,* 647 F.2d 864, 866 (8th Cir. 1981), *cert. denied sub nom., Stumpff v. United States,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982); *United States v. Fifteen Thousand Five Hundred Dollars,* 558 F.2d 1359, 1361 (9th Cir.1977); *General Finance Corp. v. United States,* 333 F.2d 681, 682 (5th Cir.1964); *United States v. One 1971 Porshe Coupe,* 364 F.Supp. 745, 748 (E.D.Pa.1973). Ownership can be evidenced in a variety of ways. Courts generally look to indicia of dominion and control such as possession, title and financial stake. *See One 1945 Douglas C–54,* 604 F.2d at 28–29; *on appeal from remand,* 647 F.2d at 866; *Fifteen Thousand Five Hundred Dollars,* 558 F.2d at 1361; *General Finance Corp.,* 333 F.2d at 682; *One 1971 Porshe Coupe,* 364 F.Supp. at 748. However, as the Eighth Circuit noted in *One 1945 Douglas C–54,* "[t]he possession of bare legal title to the res may be insufficient to establish ownership." 604 F.2d at 28. In *One 1971 Porsche Coupe,* a father had given his son the car as a gift, retaining legal title in his own name. However, the son had possession of the car and exercised dominion and

**2.** In *One 1972 Chevrolet Corvette,* the court drew a distinction between those cases where the vehicles have an "antecedent" relation with the transaction and those where the nexus is "after the fact." 625 F.2d at 1028–30. *See also United States v. One 1974 Cadillac Eldorado,* 575 F.2d 344 (2d Cir.1978) (per curiam). The instant case is distinguishable from *One 1972 Chevrolet Corvette* and *One 1974 Cadillac Eldorado* as the relation between the Datsun

and the attempted sale was before, rather than after the fact.

**3.** *Calero-Toledo* involved a Puerto Rican forfeiture statute almost identical to section 881. Its principle has been applied by implication to actions under section 881. *See, e.g., One 1977 Cadillac,* 644 F.2d at 502; *One 1974 Cadillac,* 548 F.2d at 424.

control over it. In determining that the father did not have sufficient interest in the car to challenge forfeiture, the court looked to who would actually suffer from the loss of the vehicle. 364 F.Supp. at 748. This inquiry provides an excellent focus for determining ownership in the forfeiture context.

I conclude that it is Esposito, and not the claimant, who stands to suffer from the Datsun's forfeiture. The former drove the car often while the latter never did. There is sufficient circumstantial evidence from which to conclude that although other family members might have driven it occasionally, the Datsun was really Esposito's car. For example, it was referred to as "Joey's car" and he had his own set of keys. Although the car was kept at claimant's house, given the claimant's lack of use of the car, it is fair to conclude that he exercised no dominion or control over it. However, the most telling factors concern the purchase of the Datsun. I find that the claimant did not purchase the car, despite the appearance of his name on the title and the insurance policy.[4] An inference that the car was not intended for the claimant's use arises from the facts. The car is turbocharged and capable of great speed. Claimant is a 72 year old man with a heart condition. These factors militate against its use by claimant as of its date of purchase. Esposito selected the car and its accessories and engaged in virtually all negotiations with the dealer. Considerable confusion surrounds *who paid for this car.* Claimant contends that more than half of the car was paid for from the proceeds of loans made to his other son, Thomas. However, the first loan was made in October of 1980, almost a year before the Datsun's purchase, and the second was made on September 4, 1981; one day *after* Esposito

walked into Estate Datsun with a brown paper bag of money and paid for the car. The claimant allegedly used his own money to pay for that which was not covered by the loan. Yet the claimant purchased a 1979 Oldsmobile on September 17, 1981 for $6,661.00 in cash. It is unlikely that an elderly man on a limited income would purchase two automobiles within fifteen days of one another for his own use. Even if claimant did pay for both cars, which is unlikely, he did not intend both for his own personal use, as evidenced by the fact that he never drove the Datsun. Assuming those facts, the case becomes parallel to the *One 1971 Porsche Coupe* situation, where the father purchased the car for his son. 364 F.Supp. at 748. Given claimant's limited finances and Esposito's cash payment, I conclude that claimant did not pay for the car. This conclusion is buttressed by a statement Esposito made to one of the DEA agents in the course of their negotiations. Commenting that his methamphetamine sales had been very lucrative, he mentioned buying a new car for everyone in his family, including "his Datsun 280ZX."

A somewhat similar fact situation arose in *One 1945 Douglas C–54* 604 F.2d 27 (8th Cir.1979) *on appeal after remand,* 647 F.2d 864 (8th Cir.1981), *cert. denied sub nom., Stumpff v. United States,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982). There, the claimant contended he owned an aircraft forfeited pursuant to section 881(a)(4). The claimant had ostensibly purchased the plane and was listed as owner on the registration certificate and the bill of sale. Evidence disclosed that another individual supplied the purchase price and considered himself the owner, using claimant as a "front man." *See* 604 F.2d at 28–29; 647 F.2d at 865–66. The claimant had

---

**4.** The only way to identify claimant on these two documents is by the address, as the designation of "Sr." or "Jr." is omitted. However, children often garage their cars at or near their parents homes for insurance purposes. Even adult children may insure their cars through their parent's policy to take advantage of potentially lower insurance premiums. Thus, it is not even all that clear that claimant is the

record owner of the car. This is especially true in light of the testimony that Esposito signed the order form for the car without using the designation of "Sr." or "Jr.," giving rise to the inference that he does not generally use the "Jr." However, I shall assume, without deciding, that the name and address on the title and insurance policy refers to claimant.

maintained and stored the plane, but the court concluded that he lacked standing to contest the forfeiture, 647 F.2d at 866, as everything had been paid for by the owner-in-fact. Although the evidence was more conclusive in *One 1945 Douglas C–54,* I find the situations analogous. The claimant here was a "front man" for Esposito. Esposito exercised dominion and control over the car and it is he, rather than the claimant, who will suffer from its loss. Thus, the claimant does not have a sufficient ownership interest in the Datsun to accord him standing to challenge the forfeiture.

The government's petition shall be granted and the 1981 Datsun 280ZX shall be forfeited to the United States. An appropriate order follows.

### III. CONCLUSIONS OF LAW

1. The government had probable cause for the forfeiture.

2. The forfeiture statute invoked by the government, 21 U.S.C. § 881 (1976) is applicable to this case.

3. The claimant does not have a sufficient ownership interest in the car to have standing to contest the forfeiture.

### ORDER

AND NOW, this 22nd day of April, 1983, it is hereby ORDERED that JUDGMENT is entered in favor of plaintiff, the government, and against the claimant. The Datsun 280ZX VIN # JNICZ0451BX604572 is forfeited to the United States.