571 A.2d 482

**COMMONWEALTH of Pennsylvania**

v.

**ONE 1985 DARK BLUE MERCEDES BENZ CAR** seized from **Richard E. Isaac.**

**Appeal of Ronald E. ISAAC.**

Superior Court of Pennsylvania.

Argued August 15, 1989.

Decided Jan. 5, 1990.

Reargument Denied March 16, 1990.

---

508

William T. Lawson, Philadelphia, for appellant.

David S. Thalheimer, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, BECK and MONTGOMERY, JJ.

WIEAND, Judge:

This appeal has been taken from an order which denied a petition by the registered owner of a Mercedes Benz vehicle for a return thereof and directed forfeiture of the vehicle to the Commonwealth.

On May 2, 1988, police seized from the streets of Philadelphia a dark blue, 1985 Mercedes Benz automobile. On June 17, 1988, a petition for return of the vehicle was filed by Ronald Isaac, the registered owner thereof. The Commonwealth resisted the petition, contending that the real owner was Richard Isaac who had been engaged in the illegal distribution of drugs.

At a hearing thereon, Ronald Isaac showed that he was the registered owner of the Mercedes vehicle. This fact is not disputed. His ownership interest, therefore, was

sufficient to confer standing upon Ronald Isaac to maintain an action for the vehicle's return. In order to participate in a forfeiture contest, a contestant need not prove the merit of his underlying claim; he must merely be able to show "a facially colorable interest in the proceeding." *United States v. One 18th Century Columbian Monstrance,* 797 F.2d 1370, 1375 (5th Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987). Indeed, "[a] claimant need not own the property in order to have standing to contest its forfeiture; a lesser property interest, such as a possessory interest, is sufficient standing." *United States v. $38,000.00 in U.S. Currency,* 816 F.2d 1538, 1544 (11th Cir.1987). The fact that Ronald Isaac was the registered owner of the Mercedes Benz automobile was a sufficient interest to permit his participation in the instant forfeiture case. The Pennsylvania statute, at 35 P.S. § 780–129(d), expressly provides that "[u]pon the filing of a claim for the property setting forth *a right of possession,* the case shall be deemed at issue...." (emphasis added).

Ronald Isaac testified further at the hearing regarding the manner in which he had purchased the vehicle. During his cross-examination, however, the lawyer for the Commonwealth was able to cast doubt upon Ronald's contention that he was the real owner of the vehicle. For example, the Commonwealth was able to establish that the vehicle had been used by Ronald's brother, Richard, and that Ronald was unfamiliar with various features of the vehicle, such as the sunroof, the windshield wiper, and the cost of a car telephone. The Commonwealth also showed that the license plate displayed the words, "Rick's 190."

The Commonwealth, on the other hand, failed to produce any evidence that illegal drugs had been found in the Mercedes vehicle or that it had ever had any connection whatsoever with illegal drug transactions. The Commonwealth showed only that two years earlier, in 1986, Richard Isaac had been arrested on three occasions for drug dealing

and that, on those occasions, illegal drugs had been found in the white Cadillac which he then had been driving.

From this evidence, the trial court found that Ronald Isaac was a "sham owner" and that Richard Isaac was the real owner of the Mercedes vehicle. The court concluded, therefore, that Ronald Isaac lacked "standing" to assert a right to the vehicle. However, the court not only refused to return the vehicle to Ronald Isaac, but it also ordered the vehicle forfeited to the Commonwealth. It did so without any evidence that the vehicle had ever been used or possessed for an unlawful purpose by either Ronald or Richard Isaac. This was error.

At the time when the Mercedes vehicle was seized by the police, forfeiture proceedings were governed by The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, No. 64, § 1, as amended, 35 P.S. §§ 780–128 and 780–129. With respect to the burden of proof, the statute provided at 35 P.S. § 780–129(e) as follows:

(e) At the time of the hearing, *if the Commonwealth produces evidence that the property in question was unlawfully used or possessed,* the burden shall be upon the claimant to show:

(1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon;

(2) That the claimant lawfully acquired the property;

(3) That it was not unlawfully used or possessed by him;

(4) In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. (Emphasis added).

This law remained in effect when the instant action was commenced by petition. As such, it is applicable to our review. See: *Duquesne Light Co. v. U.S. Industrial Fabricators, Inc.,* 334 Pa.Super. 444, 447 n. 2, 483 A.2d 534,

536 n. 2 (1984); *Trinity Area School District v. Dickson,* 223 Pa.Super. 546, 551, 302 A.2d 481, 484 (1973).[1]

Under this statute, "the Commonwealth had the initial burden of producing evidence that the property sought to be forfeited had been unlawfully used or possessed, i.e., that it was contraband." *Commonwealth v. One 1985 Cadillac Seville,* 371 Pa.Super. 390, 395, 538 A.2d 71, 74 (1988). See: *Estate of Peetros by Peetros v. County Detectives and District Attorney's Office,* 341 Pa.Super. 558, 492 A.2d 6 (1985); *Commonwealth v. 1978 Toyota,* 321 Pa.Super. 549, 468 A.2d 1125 (1983). See also: *Sugalski v. Cochran,* 365 Pa.Super. 370, 377, 529 A.2d 1104, 1107 (1987). It is only after the Commonwealth has sustained its initial burden of proof that the burden shifts to the claimant seeking a return of the property. *Commonwealth v. One 1985 Cadillac Seville, supra* at 395–396, 538 A.2d at 74.[2]

---

1. Although the statute was repealed on June 30, 1988, effective immediately, the provisions regarding the burden of proof were incorporated into the new law at 42 Pa.C.S. § 6802(j) as follows:

    (j) **Owner's burden of proof.**—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be upon the claimant to show:

    (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

    (2) That the claimant lawfully acquired the property.

    (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

2. The author of the opinion in *Commonwealth v. One 1985 Cadillac Seville* was Judge Beck. In the instant case, however, Judge Beck argues in dissent that the claimant must show that he is the real owner and that if he fails to do so, the vehicle may be forfeited to the Commonwealth even though the evidence fails to show that the vehicle was ever used for an unlawful purpose. Such an argument is in conflict with the observation of the unanimous court in *Commonwealth v. One 1985 Cadillac Seville, supra,* and also with the express language of the statute, which provides that the burden shall be on the claimant to show innocent ownership only "if the Commonwealth produces evidence that the property in question was unlawfully used or possessed."

■ Property subject to forfeiture includes items which are illegal per se and which have been denoted contraband. Also subject to forfeiture is property which has been derived from or used in furtherance of illegal activity, such as money derived from the illegal sale of drugs. This is known as derivative contraband. See: *Commonwealth v. Fassnacht*, 246 Pa.Super. 42, 46, 369 A.2d 800, 802 (1977). In *Commonwealth v. Landy*, 240 Pa.Super. 458, 465, 362 A.2d 999, 1002 (1976) the Court stated, "Money proceeds directly derived from and directly traceable to the sale of a controlled substance are derivative contraband subject to forfeiture." By logical extension, illegal proceeds traceable to specific property would also be derivative contraband. See: *U.S. v. Premises Known as 8584 Old Brownsville Rd., Shelby Co., Tenn.*, 736 F.2d 1129 (6th Cir.1984); *U.S. v. One 1980 Chevrolet Blazer Auto*, 572 F.Supp. 994 (E.D.N.Y.1983); *U.S. v. Certain Real Property Situated at Rt 3, Box 247 E., Mountain Home, Ark.*, 568 F.Supp. 434 (W.D. Ark.1983).

■ Property is not derivative contraband merely because it is owned by or occasionally used by a drug offender for legitimate purposes. Objects do not acquire "guilt by association" merely because they are owned by a person who has been engaged in criminal conduct. *Petition of Maglisco*, 341 Pa.Super. 525, 533, 491 A.2d 1381, 1385 (1985). The Commonwealth cannot deprive a person of his or her property and thereby impose a penalty upon him by seizing his property without showing that the property was derived from or was used to further criminal activity. The requirement that a sufficient nexus exist between the property and the prohibited criminal activity serves to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person. Comment, *Due Process Implications of Shifting The Burden of Proof in Forfeiture Proceeding Arising Out of Illegal Drug Transactions*, 1984 Duke L.J. 822, 831.

█ A Mercedes Benz vehicle is not illegal per se. Although it can become derivative contraband if it is connected with illegal drug activity, in this case the Commonwealth failed to offer even a scintilla of evidence that the Mercedes automobile had been used in the conduct of or to further illegal drug transactions. Similarly, it failed to show that proceeds of illegal drug transactions had been used to purchase the Mercedes vehicle. There was, in short, no proof of any nexus between criminal drug activity and the vehicle seized by the police. At best, the Commonwealth showed that the vehicle had been used as a means of transportation by Richard Isaac, who was suspected of being involved in the illegal drug trade.

In the absence of evidence establishing a nexus between criminal activity and the Mercedes vehicle, the trial court could not properly order the vehicle forfeited to the Commonwealth. Even if Ronald Isaac were a "sham owner," the vehicle could not be forfeited unless the Commonwealth showed that it had been used for an unlawful purpose. In the absence of such evidence, the trial court was required to return the vehicle to the registered owner. It was not for the trial court to determine further whether Ronald Isaac or Richard Isaac was the real owner of the vehicle. Irrespective of who the real owner was, without evidence that the vehicle was subject to forfeiture, the vehicle could not be awarded to the Commonwealth.

We do not hold, as the dissent accuses us of doing, that anyone can challenge the forfeiture of property by the Commonwealth. However, it is clear that a registered owner has a sufficient interest in property to participate in a proceeding to forfeit the same. Standing to participate in the proceeding is identified in subsection (d) of the statute (35 P.S. § 780–129(d)) and must be distinguished from the proof required of a party before he becomes entitled to a return of property which has been shown to be subject to forfeiture under subsection (e) of the statute (35 P.S. § 780–129(e)). An innocent owner who seeks to recover derivative contraband must show not only ownership but

also that he or she lawfully acquired the property and did not participate in or consent to the unlawful use or possession thereof. *Id.* In this case, the appellant was not required to show that he was an innocent owner out of possession of the vehicle, for the Commonwealth failed completely to show that the vehicle was subject to forfeiture.[3] As such, the rights of the appellant, as registered owner of the vehicle, were superior to the right of the Commonwealth to declare a forfeiture of the vehicle.

Finally, we observe that if the Commonwealth were to prevail in this case, the registered owner of the vehicle would be compelled to suffer a forfeiture without any evidence that the vehicle had ever been used for an illegal purpose.[4] To permit such a forfeiture would not only defy the clearly expressed intent of the legislature, but it would run afoul of due process guarantees.

The order of the trial court is reversed.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

I respectfully dissent from the majority's order because I believe that parties petitioning for the return of a motor vehicle have the initial burden of proving that they possess an ownership interest in the motor vehicle sufficient to give them standing to seek the vehicle's return. Because I believe that the petitioner in the instant appeal lacks the requisite possessory interest in the motor vehicle at issue, I

3. The dissent cites several federal decisions in support of the contention that appellant lacks standing. Although the term "standing" is employed in these court's analyses, a careful reading discloses that in all the cited cases the claimant sought the return of property which had been shown to be subject to forfeiture.

4. The dissent appears to agree that the court could not properly declare a forfeiture of the Mercedes under the circumstances of this case; but it would nevertheless refuse to return the vehicle to the registered owner thereof. Such a result is untenable, for it places the vehicle in limbo, not forfeitable to the Commonwealth and not returnable to the owner. If this vehicle is not forfeitable to the Commonwealth, it is difficult to comprehend the dissent's unwillingness to return it to the registered owner thereof.

would affirm that portion of the trial court's order that denied appellant's Petition for Return of Property.[1]

On May 2, 1988, Philadelphia police seized a 1985 Mercedes Benz automobile pursuant to the arrest of Richard Isaac for illegal drug trafficking. Subsequently, Ronald Isaac, Richard Isaac's brother, filed a Petition for Return of Property, claiming to be the owner of the automobile.

At the hearing in the Court of Common Pleas of Philadelphia County, Ronald introduced evidence that he was the registered owner of the vehicle. In addition, Ronald testified as to the manner in which he had purchased the vehicle. The Commonwealth opposed Ronald's petition, arguing that the vehicle constituted contraband and was therefore subject to forfeiture under 35 P.S. §§ 780–128 and 780–129.[2] The Commonwealth sought to establish a connection between the Mercedes Benz and the drug trafficking activities of Richard Isaac.

The trial court, per Judge McCrudden, concluded that Ronald lacked standing to petition for the return of the vehicle because the registration of the car in Ronald's name was merely a "front" to hide the assets of Richard from any forfeiture which might result from his drug trafficking activities.

On appeal, appellant first contends that the Commonwealth failed to meet its threshold burden of establishing a nexus between the automobile and illegal activity. Appellant argues that absent this nexus, the automobile did not constitute contraband, and was, therefore, not subject to forfeiture. Appellant also claims that the trial court erred in concluding that he lacked standing to seek the return of the automobile.

1. It must be noted at the outset that the docket contains no evidence that the Commonwealth filed a forfeiture petition. The only issue before this court, therefore, is whether appellant's Petition for Return of Property should be granted.

2. The relevant text from 35 P.S. § 780–129 is contained in the majority opinion.

The majority opinion addresses the issues in the order the appellant presented them. The majority first concludes that the Commonwealth failed to meet its burden of establishing that the automobile had been used either in the conduct of or in furtherance of illegal drug transactions. The majority next concludes that, solely on the basis of the automobile's having been registered in the appellant's name, the appellant has a possessory interest in the car sufficient to create standing to seek its return. Because I believe that the issue of standing constitutes a threshold issue which must be addressed before a claimant can seek the return of property, I commence my analysis with the question of standing.[3] *See Mercado v. United States Customs Service,* 873 F.2d 641, 644 (2nd Cir.1989) (claimant must establish standing before he can contest forfeiture); *United States v. Two Hundred Eighty Thousand Five Hundred Five ($280,505) Dollars in U.S. Currency,* 655 F.Supp. 1487, 1495 (S.D.Fla.1986) (claimant must establish standing before government has burden to prove connection exists between property forfeited and illegal drug activity); *United States v. One 1977 36 Foot Cigarette Ocean Racer,* 624 F.Supp. 290, 294 (S.D.Fla.1985) (standing constitutes threshold issue; claimant cannot challenge forfeiture without first establishing standing).[4]

Analysis of standing issues in cases involving the seizure of property requires a fact specific approach. *One 1985 Cadillac Seville,* 371 Pa.Super. at 397, 538 A.2d at 75

3. Absent a threshold determination of standing, *anyone* could seek the return of the automobile, and as long as the Commonwealth failed to show that the automobile constituted contraband, the item would be released to the individual seeking its return, without ever requiring that individual to prove an ownership interest sufficient to satisfy the requisites of standing. The absurdity in this approach is self-evident.

4. As this court noted in *Commonwealth v. One 1985 Cadillac Seville,* 371 Pa.Super. 390, 538 A.2d 71, 75 (1988), because the Pennsylvania forfeiture statute was intentionally patterned after the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881(a)(4) (1981), its federal counterpart, we have looked to cases which have interpreted the federal statute to aid our analysis of the Pennsylvania provision.

(1988).[5]   Courts have been reluctant to find ownership and standing in an individual based solely on the fact that a vehicle was titled and/or insured in that individual's name. *See United States v. One 1945 Douglas C-54 (DC-4) Aircraft,* 647 F.2d 864, 866–67 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982), (certificate of aircraft registration issued for registration purposes in individual's name insufficient to establish ownership; person exercising dominion and control is true owner for purpose of contesting forfeiture proceeding); *United States v. One 1945 Douglas C-54 (C-4) Aircraft,* 604 F.2d 27, 28 (8th Cir.1979), *appeal after remand,* 647 F.2d 864 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982) (possession of bare legal title may be insufficient to establish ownership); *U.S. v. One Brown 1978 Mercedes Benz,* 657 F.Supp. 316, 319 (E.D.Mo.1987) (paying for vehicle, keeping it at one's home and exercising dominion and control over it to the exclusion of others sufficient basis upon which to find ownership); *Two Hundred Eighty Thousand Five Hundred Five Dollars,* 655 F.Supp. at 1495 (claimant who possessed legal title lacked standing to contest forfeiture because she could not prove she could afford eight thousand ($8,000.00) dollar car payment and could not document where money to pay for car came from); *United States v. One (1) Homemade Vessel Named Barracuda,* 625 F.Supp. 893, 897 (S.D.Fla.1986),

---

**5.**   *See, e.g., United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., Fort Lauderdale,* 803 F.2d 625 (11th Cir.1986).   In this case, the day after a company incorporated, its president, director and sole subscriber for shares, Heidi Hartline, purchased the property at issue on behalf of the newly incorporated company.   *Id.* at 627–28.   The court found that participation in the closing was the only act Hartline ever performed on behalf of the company.   *Id.* at 628.   Hartline's boyfriend, Baldwin, was subsequently arrested for drug trafficking.   *Id.*   One of the counts in the indictment charged that Baldwin had delivered seventy-five thousand ($75,-000.00) dollars to a realty company for the purchase of the property.   *Id.*   The United States Court of Appeals for the Eleventh Circuit held that "legal title to property in an entity other than the drug trafficker does not" by itself insulate property from forfeiture.   *Id.* at 630.   The court concluded that Hartline did not possess standing because "bare legal title by one who does not exercise dominion and control over the property is insufficient" to establish standing.   *Id.*

*aff'd,* 858 F.2d 643 (1988) (possession of bare legal title by claimant who does not exercise dominion and control insufficient to establish standing); *One Racer,* 624 F.Supp. at 294 ("bare legal title may be insufficient to establish ownership"). Despite this reluctance, the majority in the instant appeal explains that "Ronald Isaac showed that he was the registered owner of the Mercedes vehicle." Maj. op. at 483. Based upon this fact, the majority concluded that "[h]is ownership interest, therefore, was sufficient to confer standing upon Ronald Isaac to maintain an action for the vehicle's return." *Id.* I am unable to conclude, however, that the mere assertion that a car is registered under one's name provides a sufficient factual basis upon which to base ownership and standing.

At the hearing, Ronald established that he was indeed the *registered* owner of the Mercedes Benz. On cross-examination, however, his testimony was seriously impeached.

Ronald testified that his car did not possess a sunroof. Yet pictures of the car introduced at the hearing convinced the trial judge that the car did possess a sunroof. In addition, Ronald knew that the car had a mobile telephone, but did not know how much the phone cost, when or where it was installed, the amount of the monthly charges, or who paid the bills. Ronald also testified that the car had two windshield wipers, when in fact the Commonwealth introduced evidence at trial that established that the car had only one windshield wiper.

At the hearing, the Commonwealth also introduced evidence that the car sported a vanity license plate that displayed the words "Rick's 190." [6] The Commonwealth also introduced a photograph of Richard holding a birthday cake, which was decorated with the words "Happy Birthday, Rick's 190" and a drawing of a car with a Mercedes Benz emblem. Although Richard testified that the birthday party was for his brother Ronald, Richard admitted that

6. Appellant claimed that he had a vanity license plate with his name on it, but failed to produce any evidence at the hearing to support this contention.

Ronald did not even attend the party. Also, although the evidence adduced at trial was contradictory, the trial court could have concluded that Richard possessed his own set of keys for the automobile.[7]

These factual findings convinced the trial court that Ronald was merely acting as a sham owner of the car for his brother Richard and, as a result, lacked standing to seek the vehicle's return.

On appeal, it is the duty of the appellate court to assess whether the record contains sufficient evidence to support the trial judge's factual findings. *Allegheny County v. Monzo*, 509 Pa. 26, 35, 500 A.2d 1096, 1101 (1985). It is clear that the record did contain sufficient evidence to support the trial judge's findings of fact. In addition, I conclude that the trial judge did not err in concluding, based upon those factual findings, that Ronald did not possess an ownership interest in the car and, therefore, lacked standing.

In its analysis of standing, the majority notes that one need not possess a property interest to possess standing. Rather, the majority asserts that evidence of " 'a facially colorable interest in the proceeding' " is sufficient. Maj. op. at 483. (quoting *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1375 (5th Cir.1986), *reh'g denied*, 802 F.2d 837 (5th Cir.1986), *cert. denied sub nom. Newton v. United States*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987)). I believe, however, that case law requires that we conduct a more in depth review of the facts of each case than the one proposed by the majority, to ascertain whether a person petitioning for the return of an item possesses a lawful ownership interest or merely a "sham" ownership interest.

---

**7.** The trial court also noted that while appellant's "income was arguably sufficient to handle the car payments and insurance premiums, the combined payments amounted to over one-half of his monthly income." Trial Ct. Op. at 2. Appellant testified that his current income was approximately twenty thousand ($20,000.00) dollars, while his car and insurance payments were four hundred and eighty ($480.00) dollars a month.

For example, in *One 1985 Cadillac Seville*, this court concluded that although the appellant who was seeking the return of a Cadillac produced documents of *title* and *registration* bearing her name, she lacked standing to petition for the car's return because she failed to establish that she purchased the car with her own money for her own use. *One 1985 Cadillac Seville*, 371 Pa.Super. at 399, 538 A.2d at 75.

In *United States v. One 1981 Datsun 280ZX*, 563 F.Supp. 470 (E.D.Pa.1983), relied upon by this court in *One 1985 Cadillac Seville*, the United States District Court for the Eastern District of Pennsylvania found that a father lacked standing to challenge the forfeiture of a car that was titled and insured under his name and allegedly utilized by his son to facilitate an attempted purchase of a controlled substance. *Id.* at 471, 475. The court reasoned that "[a]n inference that the car was not intended for the claimant's use arises from the facts. The car is turbo-charged and capable of great speed. Claimant is a 72 year old man with a heart condition." *Id.* at 475. The court concluded that based upon the father's lack of use of the car, he did not exercise "dominion or control over it" and lacked an ownership interest sufficient upon which to base standing. *Id.*[8]

In the case *sub judice*, I would hold that Ronald Isaac, too, failed to introduce sufficient evidence to establish that the Mercedes was intended for his use. Clearly the evi-

---

**8.** In *One 1981 Datsun 280ZX*, the court relied upon *United States v. One 1971 Porsche Coupe*, 364 F.Supp. 745 (E.D.Pa.1978), in which a father had given his son a car as a gift, while retaining legal title in his own name. In analyzing the father's standing to challenge the car's forfeiture, the court focussed upon who would suffer from the vehicle's loss. *Id.* at 748. The court concluded that because the father did not exercise dominion and control over the car and would not suffer from the vehicle's loss, he lacked standing to challenge its forfeiture. *Id.* Also, in *One (1) 1983 Homemade Vessel Named Barracuda*, the United States District Court for the Southern District of Florida held that an ownership or possessory interest in seized property could "be established by proof of actual possession, control, title, *and* financial stake." 625 F.Supp. at 897 (emphasis added). The court utilized the word "and" rather than "or" to emphasize that all four elements had to be proven before ownership could be established.

dence does not establish that Ronald exercised dominion and control over the vehicle. Ronald was not aware that the car possessed a sunroof or had one windshield wiper. Ronald was completely ignorant of the details of the phone installed in the car. The car sported a vanity tag with Richard's, not Ronald's name. Finally, the Commonwealth introduced a picture of a birthday cake with an inscription which read "Happy Birthday, Rick's 190." [9]

The burden was on Ronald to introduce sufficient evidence to establish that he possessed an ownership interest in the car.[10] I would hold that the record contained sufficient evidence to support the trial judge's findings of fact. In addition, I would conclude that based upon those factual findings, the trial judge did not err in concluding that Ronald lacked an ownership interest in the Mercedes sufficient to establish his standing to petition for the return of the car. *See United States v. Premises Known as 526 Liscum Drive, Dayton, Montgomery County, Ohio,* 866

**9.** Indeed, the majority observed that "[t]he fact that Ronald Isaac was the registered owner of the Mercedes Benz automobile was a sufficient interest to permit his participation in the instant forfeiture case." Maj. op. at 483. Evidence of registration alone is insufficient to establish that appellant exercised dominion and control over the vehicle.

**10.** Once again it must be emphasized that the only petition before this court is a petition for the return of property. The docket contains no evidence that the Commonwealth filed a forfeiture petition. Rather, the only petition before the trial court was appellant's. The majority accuses the dissent of concluding that if a claimant fails to establish ownership and standing, that the property at issue will be "forfeited to the Commonwealth even though the evidence fails to show that the vehicle was ever used for an unlawful purpose." Maj. op. at 484 n. 2. The majority, however, mischaracterizes this dissenting opinion. I do not contend that failure to establish ownership or standing is a sufficient basis upon which to grant a forfeiture petition. Rather, I am suggesting that failure to establish standing does constitute a sufficient basis for rejecting a claimant's petition for return of property. My refusal to consider whether the vehicle should be forfeited absent the filing of a forfeiture petition by the Commonwealth does not, as the majority contends, leave the vehicle in a state of limbo. Rather, the Mercedes vehicle occupies the same position as those vehicles which the Commonwealth has seized but regarding which the Commonwealth has not yet commenced forfeiture proceedings. We cannot accept the majority's position that because the Commonwealth has not commenced forfeiture proceedings, the car should be released to a strawman who asserts that he possesses an ownership interest in the vehicle.

F.2d 213, 217 (6th Cir.1989) (where government establishes that claimant is merely a straw owner, claimant cannot prove she possesses standing by proving she possesses only legal title; claimant must introduce evidence of exercise of dominion and control or other indicia of ownership with regard to seized item).

The majority's rubber stamp analysis of standing permits drug offenders to create sham ownership in an individual who exercises no dominion or control over the property at issue. In finding that registration equals ownership, the majority seems to be encouraging the practice of hiding one's assets under the name of another person who may later be able to establish a right to those assets by proving ignorance.

Rather than encouraging this practice, this court should look behind formal registration requirements to the facts of each case to determine whether ownership has been created in an individual who does not exercise dominion and control over the property at issue, merely in an effort to thwart the forfeiture provisions. As the United States District Court for the Southern District of Florida observed in *One Racer:*

> The rationale for the rule that bare legal title may be insufficient [for standing] is based on a candid determination that things are often not what they appear to be, especially in the world of drug trafficking. . . . In brief, people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name.
>
> .      .      .      .      .
>
> In short, courts look behind the formal title to determine whether the record title owner is a "strawman" set up to conceal the financial affairs or illegal dealings of someone else.

*A Single Family Residence*, 803 F.2d at 630 (quoting *One Racer*, 624 F.Supp. at 294–95). Where a strawman has obviously been utilized, it is incumbent upon the judiciary to deny a claimant/strawman standing to assert an ownership interest in the property at issue.