666 F.2d 228
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE 1979 MERCURY COUGAR XR-7 VIN: 9H93F720727, Defendant-Appellant.
 No. 81-1160
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 22, 1982.
 
 Hirsch & Bartley, Kevin R. Bartley, Odessa, Tex., for defendant-appellant.
 Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before BROWN, POLITZ and WILLIAMS, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 In this oddly captioned case, the owner of a 1979 Mercury Cougar XR-7 implicated in drug transactions appeals from the District Court's order of forfeiture. We find that probable cause existed to seize the car and that it had a sufficient nexus with the drug deal, and so affirm the forfeiture order.
 
 
 2
 Wanted: One Mercury Cougar, Armed and Dangerous
 
 
 3
 On February 24, 1980, police officers near Odessa, Texas received an alert that an aircraft, operating without lights, had landed in an open field outside town. Suspicious that the plane might contain illegal drugs, the officers set up a road block on a highway leading from the field and stopped all vehicles for a routine check. A U-Haul truck pulled up to the checkpoint. The officers asked its occupants, J. D. New and Humberto Nunez (the owner of the Cougar), to step out and lie on the ground. After handcuffing them, the officers searched the truck and found marijuana residue. Later that night, the officers discovered the plane, which contained several thousand pounds of marijuana.
 
 
 4
 Eight days later, co-defendant New made a voluntary statement to police officials in which he described the marijuana smuggling scheme. New, Nunez and three other men met in McAllen, Texas to arrange to import marijuana from Colombia. Nunez was driving the black 1979 Mercury Cougar XR-7, registered in New Jersey in his name, which is the subject of this action. The men drove the Cougar from McAllen to Odessa to find a suitable landing spot for the plane. Later, they drove it to Midland, where they arranged to rent the U-Haul that the police stopped on February 24, 1980. In subsequent trips in the car they leased a motor home and a metal building in which to stash the contraband after its arrival. New also said that, after the safe arrival of the marijuana, he was to drive the Cougar to Dallas with a pound or so of marijuana as a sample.
 
 
 5
 Based on New's statement, federal agents seized the car. The United States subsequently instituted forfeiture proceedings against it on the ground that it was used to facilitate importation of marijuana, a controlled substance, into the United States in violation of 21 U.S.C.A. § 881(a)(4)[1] and 49 U.S.C.A. § 781.[2] Following trial in federal district court, the Judge ordered the Cougar forfeited.
 
 Issues on Appeal
 
 6
 Nunez raises two issues on appeal. First, he argues that no probable cause existed for the Cougar's seizure. He reasons that the initial stop of the U-Haul truck was an illegal search and seizure. But for the arrest of co-defendant New, the police might never have obtained his statements implicating the Cougar in the drug operation. The statement, Nunez concludes, was "fruit of the poisonous tree" and could not constitute probable cause to seize the car.[3]
 
 
 7
 Even assuming that the stop of the U-Haul violated the Fourth Amendment, and we of course express no opinion on that question, it does not follow that we must exclude New's report. The exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), applies in forfeiture proceedings, so probable cause for forfeiture cannot rest upon tainted evidence. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170, 175 (1965); see also Jonas v. Atlanta, 647 F.2d 580, 585 n.6 (5th Cir. 1981). Yet the rule carefully distinguishes between evidentiary fruit obtained as a "direct result" of an illegal search and seizure, and admissible information obtained indirectly. "Its bar only extends from the 'tree' to the 'fruit' if the fruit is sufficiently connected to the illegal tree." Passman v. Blackburn, 652 F.2d 559, 565 (5th Cir. 1981), quoting Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 445 (1963):
 
 
 8
 We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."
 
 
 9
 Eight days after his arrest, New voluntarily made a statement to the police. Without attempting to draw an arbitrary line, we believe that eight days constitutes a sufficient lapse of time for the taint to have worn off. The statements were admissible to establish probable cause for the seizure.
 
 
 10
 Nunez also asserts that the Cougar did not have a sufficient nexus to the drug conspiracy to support a forfeiture. Under our holding in United States v. One 1977 Cadillac Coupe DeVille, 644 F.2d 500 (5th Cir. 1981), construing 21 U.S.C.A. § 881, forfeiture is proper if the car is used "in any manner " to facilitate the sale or transportation of a controlled substance. See also Wingo v. United States, 266 F.2d 421 (5th Cir. 1959). Section 881, part of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C.A. § 801 et seq., stretches substantially farther than 49 U.S.C.A. § 781. In this case, the United States relied on both statutes. Accordingly, United States v. One 1971 Chevrolet Corvette, 496 F.2d 210 (5th Cir. 1974) (49 U.S.C.A. § 781 only), on which Nunez relies, is distinguishable.
 
 
 11
 The record shows that Nunez and a co-defendant drove the Cougar from McAllen to Midland to find an airstrip on which the plane bringing the marijuana could land. The conspirators also drove in it to find a storage building for the marijuana and to rent a motor home in which to live while selling the marijuana. A few days before arrival of the plane, two of the men once again drove to Midland to rent the U-Haul truck. Finally, as New stated, he planned to take marijuana samples to Dallas in the Cougar. Although the car never carried marijuana, we believe that its use in laying the groundwork for the marijuana operation establishes beyond peradventure the nexus required by the statute.
 
 
 12
 The District Court's opinion is correct in all respects. The Cougar, if it is lucky, will find a happy new home within the borders of the Fifth Circuit.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Forfeitures
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this title.
 (2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this title.
 (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2), except that-
 (A) no conveyance used by any person as a common carrier in the transaction of business as a common carrier shall be forfeited under the provisions of this section unless it shall appear that the owner or other person in charge of such conveyance was a consenting party or privy to a violation of this title or title III; and
 (B) no conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any State.
 
 
 [2]
 Seizure and forfeiture
 Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited: Provided, That no vessel, vehicle, or aircraft used by any person as a common carrier in the transaction of business as such common carrier shall be forfeited under the provisions of this chapter unless it shall appear that (1) in the case of a railway car or engine, the owner, or (2) in the case of any other such vessel, vehicle, or aircraft, the owner or the master of such vessel or the owner or conductor, driver, pilot, or other person in charge of such vehicle or aircraft was at the time of the alleged illegal act a consenting party or privy thereto: Provided further, That no vessel, vehicle, or aircraft shall be forfeited under the provisions of this chapter by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such vessel, vehicle, or aircraft was unlawfully in the possession of a person who acquired possession thereof in violation of the criminal laws of the United States, or of any State.
 
 
 [3]
 The probable cause necessary in a forfeiture proceeding is "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." U.S. v. One 1978 Chevrolet Impala, 614 F.2d 983 (5th Cir. 1980); U.S. v. One 1975 Ford Pickup Truck, 558 F.2d 755 (5th Cir. 1977); see also Patenotte v. United States, 266 F.2d 647 (5th Cir. 1959)