(818 P.2d 800)

No. 65,332 ■

STATE OF KANSAS, *Appellant*, v. ONE 1984 CHEVROLET CORVETTE, *Appellee*.

Opinion filed June 14, 1991.

*Kyle G. Smith*, assistant attorney general, and *Robert T. Stephan*, attorney general, for appellant.

*Caleb Boone*, of Hays, for appellee.

Before LEWIS, P.J., BRAZIL and GERNON, JJ.

BRAZIL, J.: In a drug forfeiture case involving a 1984 Corvette automobile, the State appeals from the court's order sustaining a motion by Gregory Newell, defendant/owner-appellee, granting judgment on the pleadings and dismissing the forfeiture action. We reverse and remand for further proceedings.

The State contends recent Kansas case law provides a basis for finding Newell's Corvette facilitated his purchase and/or sale of cocaine. Newell responds that, because the drug sale was completed and he used the Corvette only to pick up the profits from the sale, the car could not have facilitated the drug transaction.

The trial court's review in this matter is clear. "In considering a motion for judgment on the pleadings . . . the question is whether upon the *admitted* facts the plaintiff has stated a cause of action." *Tabor v. Lederer,* 205 Kan. 746, 748, 472 P.2d 209 (1970).

"The motion serves as a means of disposing of the case without a trial where the total result of the pleadings frame the issues in such manner that the disposition of the case is a matter of law on the facts alleged or admitted, leaving no real issue to be tried. [Citation omitted.] The motion operates as an admission by movant of all fact allegations in the opposing party's pleadings." *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.,* 214 Kan. 139, 140, 519 P.2d 682 (1974).

This court's scope of review of matters of law is well settled. Matters of law are subject to plenary review on appeal. See *Beaver v. Kingman,* 246 Kan. 145, 148, 785 P.2d 998 (1990).

The State's petition alleged that Robert Heller advised law enforcement that Newell had approached him wanting to invest $500 with Heller for the purchase and resale of cocaine for profit. They reached an agreement whereby Newell would receive 60 percent of the profits and Heller 40 percent. Newell then gave Heller $500.

Newell and Heller met a few days later, and Newell asked whether the cocaine had been purchased. Heller explained he had used $200 to bond out of jail and had given the remaining $300 to a cocaine supplier but had not yet received any cocaine. Newell told Heller that he was hoping to pay for a trip with the profits and was needing the money. He told Heller that he could invest several thousand dollars more in cocaine if this venture was profitable.

Later that same day, Heller contacted Newell and told him the cocaine had been sold and the money was available. A meeting was set up for midnight at a convenience store. To aid in recognition, Newell told Heller that he would be driving his blue Corvette.

Heller arrived at the convenience store parking lot where Newell was waiting in a 1984 blue Corvette. Heller gave Newell only $250 and advised he still had a "a little toot" to get rid of and would try to be by with " 'er tomorrow." They also talked about another "deal" that could be worked out when Newell returned

from his trip with the possibility of going "big time." Newell concluded this conversation by stating: "Pick me up some toot and we will work a deal out," to which Heller responded, "OK, sounds good."

Newell then drove away from the meeting and was stopped by a deputy sheriff and arrested for solicitation to commit a felony. Shortly after, the State filed its forfeiture action against the Corvette. Newell filed a motion to dismiss and/or for judgment on the pleadings, reasoning there was no evidence the Corvette was used to facilitate the cocaine sale as required by K.S.A. 1990 Supp. 65-4156(a)(4); consequently, the Corvette was not subject to forfeiture.

The applicable forfeiture statute, K.S.A. 1990 Supp. 65-4135, reads in part:

"(a) The following are subject to forfeiture:

. . . .

"(4) all conveyances, including aircraft, vehicles or vessels, which are used or intended for use to transport or in any manner to facilitate the transportation, sale, receipt, possession, concealment, purchase, exchange or giving away of [controlled substances]."

K.S.A. 1989 Supp. 65-4171(d) placed the burden on the State to establish by clear and convincing evidence that the property is subject to forfeiture under the statute. We note the "clear and convincing" standard was changed by the 1990 legislature to a "preponderance of the evidence" standard; however, the amendment at L. 1990, ch. 232, § 2 is not applicable in this case.

The State relies heavily on State ex rel. Love v. One 1967 Chevrolet, 247 Kan. 469, 799 P.2d 1043 (1990). This opinion had not been filed when the district court granted Newell's motion for judgment on the pleadings. The Supreme Court, citing federal case law, broadly construed K.S.A. 1990 Supp. 65-4135(a)(4). In particular, the court focused on that portion of the statute which reads: " 'vehicles . . . which are used . . . in any manner to facilitate the transportation, sale, receipt, possession, concealment, purchase, exchange or giving away of [controlled substances].' " 247 Kan. at 472-73. The Kansas statute is almost identical to the analogous federal forfeiture statute, 21 U.S.C. § 881 (1988), which provides:

"(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

"(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]."

The Kansas Supreme Court agreed with the federal district court for the Eastern District of New York, which stated:

" 'Under the federal forfeiture statutes a vehicle is subject to forfeiture if it is used "in any manner to facilitate the transportation, sale, receipt, possession or concealment of [contraband]." [Citation omitted.] Facilitation has been broadly construed to encompass any use or intended use of a vehicle which makes trafficking in contraband "less difficult and laborious;" *there is no requirement that contraband be actually found within the vehicle.*' " 247 Kan. at 474 (quoting *United States v. One 1980 BMW 320i*, 559 F. Supp. 382, 384 [E.D.N.Y. 1983]).

In *State ex rel. Love v. One 1967 Chevrolet*, the Kansas Supreme Court upheld forfeiture after broadly construing the facilitation clause of the statute. 247 Kan. at 474. In that case, however, there was also much testimonial evidence that cocaine purchases had been made from the car itself. 247 Kan. at 473. Further, police found a bottle in the car which was presumed to have contained cocaine, though the residue remaining in the bottle was too small to conduct an accurate test. 247 Kan. at 471.

The instant case differs factually, as Newell points out, in that the State did not contend in its pleadings that Newell had transported or sold cocaine from the Corvette. The petition only states Newell used the car to pick up proceeds from Heller's sale and that the two men had a brief discussion concerning future drug deals.

Other federal courts have also broadly construed the federal statute's facilitation clause. See *U.S. v. One 1974 Cadillac Eldorado Sedan, Etc.*, 548 F.2d 421, 426 (2d Cir. 1977) (vehicle subject to forfeiture if it was used to transport confederates to a prearranged meeting where a sale is merely discussed or if it is used as a lookout car during the actual transaction); *U.S. v. One 1979 Mercury Cougar XR-7*, 666 F.2d 228, 230 (5th Cir. 1982) (vehicle subject to forfeiture if it is used in "laying the groundwork" for the sale of contraband).

The foregoing broad construction is at odds with a First Circuit decision requiring an antecedent relationship between the vehicle at issue and the contraband. See *United States v. One 1972 Chevrolet Corvette*, 625 F.2d 1026 (1st Cir. 1980). The First Circuit adopted the rationale that, in order to be subject to forfeiture, the car must be involved in the transportation of contraband before or during the actual transaction. 625 F.2d at 1030. This narrow interpretation has not been followed generally.

Just as Edward Simard, the owner of the 1972 Corvette, was a "banker" for a drug buy in the First Circuit case, so too was Newell acting as a "banker" for cocaine purchases in this case. However, Simard used his Corvette only to pick up his share of the proceeds, which apparently concluded the venture. No further dealings were discussed at that meeting. Newell's meeting with Heller was not the conclusion of their venture. Newell received only $250 of his original investment, Heller told him he had not sold all of the cocaine, and Newell told Heller to "[p]ick me up some toot and we will work a deal out".

Assuming the allegations in the State's petition to be true for purposes of the motion to dismiss and/or judgment on the pleadings, we conclude that a question is presented for the trier of fact to determine whether the Corvette was being used to facilitate a sale, purchase, or exchange of controlled substances. The stated facts, if true, would support a finding of an ongoing conspiracy.

We agree with the State's argument that obtaining, transporting, fronting, laundering, and disposing of money are as inherently part of the drug trade as the drugs themselves.

As noted in the *Love* case, facilitation may be broadly construed to encompass any use of a vehicle which makes trafficking in contraband less difficult and laborious. *State ex rel. Love v. One 1967 Chevrolet*, 247 Kan. at 474.

Federal case law clearly allows forfeiture where a vehicle is used as either transportation for principals involved in drug sale negotiations or where the vehicle itself is used as the meeting place. See *U.S. v. One 1974 Cadillac Eldorado Sedan, Etc.*, 548 F.2d 421 (forfeiture warranted where car is used to transport the dealer or his confederates to the scene of the sale or to a meeting where the sale is proposed); *U.S. v. One 1979 Mercury Cougar*

*XR-7*, 666 F.2d 228 (forfeiture warranted where car transports principals to meeting to "lay the groundwork" for the sale of contraband).

Using the Corvette to meet with Heller to receive partial repayment of Newell's front money and to discuss the sale of the rest of his initial purchase and purchase of additional contraband could be construed as facilitating the drug venture between Newell and Heller.

The trial court's judgment on the pleadings and dismissal of the forfeiture is reversed and the case remanded for trial.

Finally, Newell contends the State failed to promptly prosecute the forfeiture as required by statute. K.S.A. 1989 Supp. 65-4171 reads:

"(a) The county or district attorney within whose jurisdiction there is property which is sought to be forfeited pursuant to K.S.A. 65-4135 or 65-4156, and amendments thereto, or such attorney as employed by the law enforcement agency and approved by the county or district attorney seeking forfeiture of such property, shall promptly proceed against the property by filing in the district court having jurisdiction of such property a petition for an order to show cause why the court should not order forfeiture of such property."

The State filed the petition for show cause order and forfeiture 59 days after Newell's arrest. Newell cites a United States District Court decision construing a federal statute similar to 65-4171. In *Dwyer v. United States*, 716 F. Supp. 1337, 1340 (S.D. Cal. 1989), the court determined the Drug Enforcement Administration's seizure notice, filed 62 days after seizure of defendant's vehicle, was not sent at the "earliest practicable opportunity" and thus violated the applicable federal forfeiture statute.

The federal statute at issue, 21 U.S.C. § 881-1(b) (1988), reads:

"At the time of seizure, the officer making the seizure shall furnish to any person in possession of the conveyance a written notice specifying the procedures under this section. At the earliest practicable opportunity after determining ownership of the seized conveyance, the head of the department or agency that seizes the conveyance shall furnish a written notice to the owner and other interested parties (including lienholders) of the legal and factual basis of the seizure."

The *Dwyer* court noted that the statute cannot realistically contemplate a delay in filing of longer than a week after ownership is determined. 716 F. Supp. at 1340.

Perhaps a more relevant case is *U.S. v. One 1987 Ford F-350 4x4 Pickup*, 739 F. Supp. 554 (D. Kan. 1990), where the forfeiture action was filed 166 days after the truck was seized. The court found the forfeiture filing timely. 739 F. Supp. at 561. It stated four factors should be used to evaluate claims of post-seizure delay: (1) the length of delay, (2) the government's reason for the delay, (3) the owner's assertion of any rights to a hearing during the delay period, and (4) whether the delay prejudiced the owner's interest. 739 F. Supp. at 560-61 (citing *United States v. $8,850*, 461 U.S. 555, 566-69, 76 L. Ed. 2d 143, 103 S. Ct. 2005 [1983]).

In *One 1987 Ford*, the court ruled the length of delay was not per se unreasonable. The court also noted the truck owner showed no prejudice by the delay, nor was there a showing that he asked for the return of his property or sought a hearing on the matter prior to the filing of the forfeiture action. 739 F. Supp. at 561.

Likewise, in the case before this court, it would be difficult to find a 59-day delay between seizure and forfeiture filing per se unreasonable. Newell also has shown no prejudice suffered by the delay. Further, there is little indication in the record on appeal Newell asked for the return of the Corvette. There is also little indication he sought a hearing in the matter prior to the filing of the forfeiture action.

Reversed and remanded for trial.