(136 P.3d 496)
No. 94,025

STATE OF KANSAS, PRATT COUNTY SHERIFF'S DEPARTMENT, *Appellant,* v. 1997 CHEVROLET MONTE CARLO (VIN # 2G1WX12X3V9301308); $415.00 U.S. CURRENCY, *Appellee.*

Opinion filed June 23, 2006.

*Ernest H. Richardson,* county attorney, and *Phill Kline,* attorney general, for appellant.

*Michael S. Holland,* and *Michael S. Holland, II,* of Holland and Holland, of Russell, for appellee.

Before GREENE, P.J., PIERRON and CAPLINGER, JJ.

CAPLINGER, J.: In this appeal of the district court's decision finding Christina Winkel's 1997 Chevrolet Monte Carlo was not subject to forfeiture under K.S.A. 60-4105(a)(2), the State argues the district court erred in finding the vehicle was not used in a manner which facilitated the conduct giving rise to forfeiture—*i.e.*, the sale of marijuana. We hold the district court did not disregard undisputed evidence or exhibit bias, passion, or prejudice in finding the State failed to meet its burden of proof to show that the Monte Carlo was used or intended for use in any manner to facilitate the sale of marijuana where, as here, Winkel did not travel to the location in question for the purpose of conducting or finalizing a drug sale, but rather to pick up her son, who was in gymnastics class.

*Background*

On October 28, 2003, Detective Jeff Ward with the Pratt County Sheriff's Department was contacted by a confidential informant. The informant told Detective Ward that Marco Montosa wanted to sell him marijuana so Montosa could obtain money to leave town. Detective Ward met with the informant, equipped him with an electronic transmitting device, and gave him $300 to make the purchase.

The informant left the meeting location in his vehicle and proceeded to the home of Christina Winkel, Montosa's cousin, where

the transaction was to occur. The informant had been to Winkel's home on several previous occasions to purchase marijuana from Montosa.

As the informant drove to Winkel's home, Detective Ward followed in his own vehicle a short distance behind the informant After turning onto Fifth Street, approximately 3 blocks from Winkel's residence, Detective Ward heard and recognized Winkel's voice over the transmitter shouting at the informant to drive around the block and come back. From the position Ward took to conduct surveillance, he could see Winkel's green 1997 Chevrolet Monte Carlo parked in the 100 block of East Fifth, but he could not see if Winkel was inside of the vehicle.

Over the transmitter, Detective Ward then heard Winkel telling the informant that she had some marijuana at her house she needed to sell so Montosa could get out of town. Ward then heard Winkel tell the informant to follow Winkel back to her house. Ward observed both vehicles drive past him with Winkel's vehicle in the lead. Winkel's vehicle had dark, tinted windows and Ward could not see whether anyone else was in the vehicle.

Detective Ward followed the vehicles to Winkel's residence, where both vehicles were parked in the driveway. Over the transmitter, Ward heard Winkel and the informant discuss a quantity of 1½ ounces of marijuana. Some time later, the informant returned $150 of the $300 to Detective Ward along with an 1½ ounces of marijuana.

Winkel testified at the forfeiture hearing that she was standing outside of her vehicle in front of a building waiting for her son to finish gymnastics practice, when she saw the informant's vehicle. Winkel testified she waived the informant down, he parked next to her car, and he told her he would meet her at her house. Winkel then went into the building to get her son, returned to her car, and drove home. Winkel testified the informant arrived at her home 15 to 20 minutes later, where the sale then occurred.

Winkel pled guilty to two counts of selling marijuana in violation of K.S.A. 65-4163(a)(3). Subsequently, the State filed an in rem petition seeking forfeiture of Winkel's 1997 Monte Carlo pursuant to K.S.A. 60-4104(b) and 60-4105(b)(2).

Following a bench trial, the district court found the vehicle was not used to facilitate the sale of the marijuana, and thus was not subject to forfeiture. The State appeals.

*Standard of review*

The parties disagree as to the applicable standard of review. Winkel characterizes the trial court's decision that the vehicle was not subject to forfeiture as a "negative finding." The State argues the issue requires interpretation of K.S.A. 60-4105, and argues our review is de novo.

We agree with Winkel that the trial court specifically found the State failed to meet its burden of proof. "The correct appellate standard of review when a party has failed to sustain its burden of proof is the one applied to a negative finding of fact." *In re Marriage of Kuzanek,* 279 Kan. 156, 159, 105 P.3d 1253 (2005). We will not disturb such a finding absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *General Building Contr., LLC v. Board of Shawnee County Comm'rs,* 275 Kan. 525, 541, 66 P.3d 873 (2003).

*Application of K.S.A. 60-4105(b)(2)*

Under the Kansas Standard Asset Seizure and Forfeiture Act (KSASF), "all property" is subject to forfeiture if it is "used or intended to be used in any manner to facilitate conduct giving rise to forfeiture." K.S.A. 60-4105(b)(2). Acts giving rise to forfeiture include any violation of the Uniform Controlled Substances Act, K.S.A. 65-4101 *et seq.* K.S.A. 60-4104(b). The Act defines "facilitate" as "any act or omission broadly construed to encompass any use or intended use of property which makes an act giving rise to forfeiture less difficult and laborious." K.S.A. 60-4102(d).

In support of its argument that the requirements of the forfeiture statute were met here, the State initially notes that there have been no reported cases since the 1994 enactment of the KSASF that construe the term "facilitate." However, the State points out that the term as used in the Kansas' pre-1994 forfeiture law was interpreted broadly. See, *e.g., State v. One 1984 Chevrolet Cor-*

*vette*, 16 Kan. App. 2d 5, 10, 818 P.2d 800, *rev. denied* 249 Kan. 777 (1991). In *One 1984 Chevrolet Corvette*, the claimant drove his Corvette to a convenience store to receive partial payment of the proceeds of a previous drug sale from the co-perpetrator and to discuss further drug transactions. This court found that the use of the vehicle could be construed as facilitating the drug venture, and reversed and remanded the trial court's judgment on the pleadings in favor of the owner of the vehicle. 16 Kan. App. 2d. at 10.

The State further suggests that we consider appellate court interpretations of Georgia's forfeiture statute, which, like Kansas' statute, allows forfeiture of property that is directly or indirectly "used or intended for use in any manner to facilitate a violation of [the Georgia Controlled Substances Act] or any proceeds derived or realized therefrom." Ga. Code Ann. § 16-13-49(d)(2) (2005 Supp.). For instance, in *Bettis v. State*, 228 Ga. App. 120, 122, 491 S.E.2d 155 (1997), the Georgia Court of Appeals interpreted this statute to allow forfeiture where the vehicle's owner drove his vehicle to a particular location for the purpose of engaging in prohibited drug activity.

Moreover, the State points out that Florida and Massachusetts courts have interpreted their similar state forfeiture statutes in the same manner. See, *e.g.*, *Commonwealth v. One 1987 Mercury Cougar Automobile*, 413 Mass. 534, 536, 600 N.E.2d 571 (1992) (seller drove himself and supplier to buyer's house to conduct drug transaction); *Duckham v. State*, 478 So. 2d 347, 348 (Fla. 1985) (vehicle's owner, acting as a middleman, drove to restaurant to negotiate drug transaction and then to his apartment where sale occurred).

Finally, the State relies on several federal court decisions that have similarly interpreted the federal forfeiture statute. The federal statute allows forfeiture of "[a]ll conveyances . . . which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of controlled substances. 21 U.S.C. § 881(a)(4) (2000). The federal cases cited by the State consistently interpret this statute to allow forfeiture of vehicles used to transport persons involved in drug trafficking to the sites of drug transactions or negotiations. See

*United States v. One 1984 Cadillac*, 888 F.2d 1133, 1137 (6th Cir. 1989) (Cadillac used to transport purchaser to site of drug transaction); *One Blue 1977 AMC Jeep CJ-5 v. United States*, 783 F.2d 759, 761 (8th Cir. 1986) (jeep used by purchaser to drive to several meetings where the purchase and sale of narcotics discussed); *United States v. 1966 Beechcraft Aircraft Model King Air*, 777 F.2d 947, 948-49 (4th Cir. 1985) (seller flew private plane to city where drug transaction was to occur); *United States v. One 1979 Porsche Coupe*, 709 F.2d 1424, 1427 (11th Cir. 1983) (subject vehicle used by potential purchaser of drugs—a "pivotal figure in the transaction"—to drive several hundred miles to hotel where sale of cocaine negotiated); *United States v. One 1977 Cadillac, Etc.*, 644 F.2d 500, 503 (5th Cir. 1981) (vehicle used to transport supplier, an "indispensable link" who approved the price and buyers, to site of drug transaction); *United States v. 1974 Cadillac Eldorado Sedan, Etc.*, 548 F.2d 421, 422 (2d Cir. 1977) (agent of seller drove seller to buyer's house, where the parties discussed the sale of narcotics).

It is clear both federal and state courts have consistently interpreted language similar to that used in the KSASF to allow forfeiture of an automobile used to transport individuals to the site of the negotiation of a drug transaction or to the drug transaction itself, although no contraband or money was found in the vehicle. Further, as the State points out, the KSASF's provisions are to "be applied and construed to effectuate its general purpose to make uniform law with respect to the subject of [the] act among the states enacting the act." K.S.A. 60-4124.

This case is distinguishable, however, in that Winkel did not travel to the location where she spoke with the informant for the purpose of conducting or finalizing a drug sale. Rather, it is undisputed that Winkel drove to that location to pick up her son, who was in gymnastics class.

Significantly, when Winkel saw the informant and waived him down, the informant was already driving to Winkel's residence to complete a drug transaction with Winkel's cousin, Montosa—a transaction which previously had been arranged between Montosa and the informant.

Further, there is no dispute that Winkel was standing outside her vehicle when she waived the informant down, or that she remained outside her vehicle during their brief conversation. Moreover, Winkel testified she planned to return to her home immediately after she picked up her son from his gymnastics class, regardless of whether she had seen or talked to the informant.

We note that there was some dispute as to the nature of the conversation between Winkel and the informant. Winkel testified that the informant told Winkel that he would meet her at her home, while Detective Ward testified he heard Winkel tell the informant to meet Winkel at her home. This discrepancy, however, was not material to the issue of whether the vehicle was used to facilitate the sale of marijuana, as it was uncontroverted that the details of the drug transaction had already been negotiated, and the informant was driving to Winkel's home to complete that transaction when he had the conversation with Winkel outside Winkel's vehicle.

Thus, in reviewing the trial court's decision, we find the following undisputed evidence significant: (1) Winkel drove to the location in question to pick up her son, who was in gymnastics class; (2) as Winkel waited outside of her vehicle for her son, she saw the informant driving by and waived at him to stop; (3) at that moment, the informant was on his way to Winkel's home to complete a drug transaction which he had already prearranged with Winkel's cousin; and (4) Winkel and the informant had a brief conversation, after which Winkel picked up her son and returned to her home, where she had planned to go before she saw the informant.

Under these circumstances, it cannot be said that Winkel's use of the Monte Carlo made the sale of the marijuana less difficult and laborious. See K.S.A. 60-4102(d). Therefore, we hold the district court did not disregard undisputed evidence or exhibit bias, passion, or prejudice in finding the State failed to meet its burden of proof to show that the Monte Carlo was used or intended for use in any manner to facilitate the sale of marijuana.

Affirmed.