UNITED STATES of America, Plaintiff,

v.

ONE 1980 CHEVROLET BLAZER AUTOMOBILE, VIN # CKL18AF111432, Defendant.

No. CV 81–1843.

United States District Court,
E.D. New York.

Sept. 2, 1983.

---

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Beryl R. Jones, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Dennis Lebwohl, Kew Gardens, N.Y., for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This forfeiture proceeding stems from the arrest August 19, 1980 of John Radice after he and others tried to sell a kilogram of pure heroin to a federal informant for $260,000. Following a jury trial before then-Chief Judge Lloyd F. MacMahon of the Southern District of New York, Mr. Radice was found guilty of conspiring to distribute heroin and cocaine in violation of 21 U.S.C. § 846 (1976). He received a ten-year sentence and a $5,000 fine. His unsuccessful appeal is reported in *United States v. Martino,* 664 F.2d 860 (2d Cir.1981).

The issue before this Court is whether, as a result of Mr. Radice's conviction and evidence adduced during a bench trial on June 12, 1983, the Government may obtain the forfeiture of the defendant-in-rem Chevrolet Blazer, pursuant to 21 U.S.C. § 881(a)(6)

**995**

(1976) and 49 U.S.C. §§ 781, 782 (1976). We hold that it may.

The Blazer truck was purchased in March, 1980 for $10,583.50 from BJL Leasing Corp. of Englewood Cliffs, N.J. Payment was in the form of cash or certified check. Trial Exhibit [Ex.] 5; Trial Transcript [Tr.] at 11–12, 15. Although more will be said below regarding whether Mr. Radice or his wife-to-be, claimant Elyse Lottier, paid for the automobile, it is a fact that the New Jersey Division of Motor Vehicles was not notified of the change of ownership, and that neither Mr. Radice nor his wife had officially registered it in either of their names. Ex. 4; Tr. at 5–6, 15, 42.

None of this would be remarkable were it not for the manner in which Mr. Radice conducted his other financial dealings during the period extending from 1978 until his arrest on August 19, 1980. For example, in January 1980, he bought two 1980 Lincoln automobiles, also from BJL Leasing Corp., and paid for them with $36,000 in cash. Tr. 9–11. They apparently were to be used as part of a limousine service he operated. However, Mr. Radice reported to the Internal Revenue Service that his business income for the years 1978, 1979, and 1980 was $11,244.23, $20,386.67, and $34,971.00, respectively. For the latter year, he reported only $4,900 in "car and truck expenses." Ex. 1–3. Moreover, Mr. Radice paid $27,191.70 in cash for the reception following his August, 1980 marriage to Miss Lottier (hereinafter referred to as "Mrs. Radice").

The first issue is whether, as the Government contended at trial, there exists probable cause to believe that the 1980 Blazer was purchased with the proceeds of a drug transaction in violation of Title 21 of the United States Code.[1] *United States v.*

---

1. At trial, the Government attempted to show that the defendant vehicle was subject to forfeiture under 21 U.S.C. § 881(a)(6) as a thing of value "furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, [and] all proceeds traceable to such an exchange...." However, ¶ 6 of its Complaint In Rem (filed June 8, 1981) alleged that forfeiture was appropriate because the vehicle had been used "to transport, conceal, possess and facilitate the sale of a quantity of heroin...." *See* 21 U.S.C. § 881(a)(4). Nonetheless, a Pre-Trial Order dated July 7, 1983 and signed by both parties correctly identifies the issue that was tried. Fed.R.Civ.P. 15(b) permits issues not raised in the pleadings to be tried by the express consent of the parties. The Pre-Trial Order supplies this consent. *See* 6 C. Wright &

*$2,500.00 in United States Currency,* 689 F.2d 10, 12 (2d Cir.1982); *United States v. Fleming,* 677 F.2d 602, 609–10 (7th Cir. 1982); *United States v. One 1971 BMW 4–Door Sedan,* 652 F.2d 817, 822 (9th Cir. 1981); *United States v. $364,960.00 in United States Currency,* 661 F.2d 319, 322–25 (5th Cir.1981); *United States v. United States Currency Amounting to the Sum of $20,294.00 More or Less,* 495 F.Supp. 147, 150 (E.D.N.Y.1980). As in other contexts, "probable cause" means "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980) (per curiam).

We find that the Government has met its burden here. First, Mr. Radice was convicted of participating in a drug conspiracy during the first nine months of 1980. Second, during the period of the conspiracy, he made purchases—in cash ($63,191.70) or by cash or certified check ($10,583.50)—totaling $73,775.20. We note that it is highly unusual in transactions of this magnitude to pay in cash unless the buyer is motivated by a desire to avoid detection. Third, the aggregate income he reportedly received in 1978–80 was only $66,601.90—hardly enough to support such heady consumption. Finally, he failed to notify either New Jersey or New York authorities of the Blazer purchase, additional proof of an effort to avoid tracing. This Circuit has held that possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking is admissible to show that the possessor was involved in the trafficking conspiracy. *See United States v. Barnes,* 604 F.2d 121, 146 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Magnano,* 543 F.2d 431, 437 (2d Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977); *United States v. Schwartz,* 535 F.2d 160, 165 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977); *United States v. Tramunti,* 513 F.2d 1087, 1105 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). In view of Mr. Radice's conspiracy conviction and the strong suggestion that he tried to conceal the ownership of the Blazer, we are unable to say that the Government has failed to meet its burden of establishing probable cause. This finding is not affected by the alternative explanation, discussed below, for the way in which the Blazer came into the hands of Mr. and Mrs. Radice. *See United States v. $364,960.00 in United States Currency,* 661 F.2d at 324.

Once the Government has made this initial showing, the burden shifts to the claimant, here Mrs. Radice, who must demonstrate that (1) she has standing to contest the forfeiture, *Id.* at 326; *United States v. $15,500.00 in United States Currency,* 558 F.2d 1359 (9th Cir.1977), and (2) "the property was not used in violation of the law." *United States v. $83,320.00 in United States Currency,* 682 F.2d 573, 577 (6th Cir.1982). Mrs. Radice has not succeeded in meeting her burden on either ground.

First of all, the only evidence that she has any ownership interest in and therefore standing to contest the forfeiture of the defendant Blazer is the fact that her name was typed on the back of the Certificate of Title Mr. Radice received from BJL Leasing.[2] However, BJL president Robert L. Benjamin stated that neither he nor any of his employees added the claimant's name to the title certificate. Tr. at 14. After viewing the testimony of Mr. Benjamin and the claimant, and taking into account the former's apparent disinterest in the outcome, we conclude that no BJL agent or employee typed the claimant's name on the document in question. Moreover, the claimant herself acknowledged on cross-examination that her husband purchased a number of accessories for the defendant auto, including a telephone (with the number listed in his name), radar detector, exterior pin-stripes,

---

A. Miller, *Federal Practice and Procedure* § 1493, at 461–62 (1971).

2. BJL Leasing purchased the vehicle from Laird-Johnson, Inc. of Rutherford, N.J. At the time it was transferred to Mr. Radice, title was in the name of BJL Leasing.

trailer hitch, and hat-rack. Tr. at 45, 46, 48. Although at trial Mrs. Radice retracted prior deposition testimony to the effect that her husband also had purchased a burglar alarm system, stating instead that she had bought the system for cash "from a place on Queens Boulevard" (she could not recall its name), we choose to credit her initial statement and find that this, too, was provided by her husband. Tr. at 46–48. Finally, Government agents seized the defendant Blazer from outside the home of Mr. Radice's father, not the claimant's residence. Tr. at 6–7.

Rather than introducing evidence of ownership, Mrs. Radice has set forth a statement which—while perhaps internally consistent—has little or no connection to the facts adduced at trial and the inferences that may reasonably be drawn therefrom. She claims that she bought the Blazer with the proceeds of a $10,000 cash loan she obtained from her husband's grandfather, Joseph (or Guiseppe) Terese, before his death in June, 1980. Tr. at 36–48, 42. She testified that Mr. Terese had initially offered to give her the money, but that she felt "very uncomfortable taking a gift of that amount." Tr. at 37. So it was that in early 1980, she, her husband-to-be, and the latter's grandfather arranged a loan—to be repaid, she claimed at trial, after her husband's return from prison. Tr. at 38, 39, 41. The only other person who may know of the "loan" is John Radice's grandmother. Tr. at 41. Neither she nor John Radice testified at trial. More important, however, is the utter absence of any documentation supporting Mrs. Radice's story about the loan. Evidence of indebtedness, cancelled checks, Mr. Terese's estate tax return—none of these (assuming they exist) were introduced at trial. Tr. at 36–55.

Of course we do not wish to imply that Mrs. Radice's story is completely incredible. It has not been corroborated, however, and is just not persuasive. The crucial consideration is the burden of proof. Mrs. Radice must show by a preponderance of the evidence that the Blazer is not subject to forfeiture. *United States v. Fleming,* 677 F.2d at 609. Her proof, if it may be called that, was far too evanescent to sustain her case.

In other words: "[A] remote possibility does not vitiate a strong probability, and neither will it create a preponderance of evidence against a far more reasonable conclusion." *United States v. $83,320 in United States Currency,* 682 F.2d at 577–78; or, more succinctly, "Speculation must leave the burdened party the loser." *United States v. Fleming,* 677 F.2d at 610.

Even if Mrs. Radice were found to have standing, she has not demonstrated that the Blazer was purchased with legally obtained funds. The facts need not be repeated. Our reasoning follows that set forth in the preceding discussion on probable cause, except that the Government's position on this point is even more compelling because from the outset the burden has rested on the claimant.

In view of the above, the Government's forfeiture application will be granted.

SO ORDERED.