**In the Matter of ONE 1985 MERCEDES BENZ AUTOMOBILE.**

**C.A. No. 90M–09–2.**

Superior Court of Delaware,
New Castle County.

Submitted Oct. 13, 1992.
Decided Nov. 19, 1992.

Adam L. Balick, Deputy Atty. Gen., Dept. of Justice, Wilmington, for State.

Samuel L. Guy, Wilmington, for claimant.

## OPINION

COOCH, Judge.

This is a civil action brought by Theresa Smith ("Claimant") under Superior Court Civil Rule 71.3 seeking the return to her of one 1985 Mercedes Benz [1] ("Vehicle"). The Vehicle was seized on July 30, 1990 by the New Castle County Police Department in connection with the arrest of Anthony Smith, Claimant's brother, on various drug related charges. In opposition, the State has filed a petition for forfeiture pursuant to 16 *Del.C.* § 4784.[2] Claimant having waived her right to a trial by jury, this case was tried before the Court on October 8 and 13, 1992. For the reasons stated herein, the Court, pursuant to 16 *Del.C.* § 4784(j), grants the State's application for forfeiture and denies Claimant's petition for the return of the Vehicle.

## I. FACTUAL BACKGROUND

The Vehicle was seized on July 30, 1990. At the trial of this forfeiture action, Detective Nicholas Gregory of the New Castle County Police Department testified that the vehicle was seized when Anthony Smith, Claimant's brother, had operated the Vehicle while participating in a drug transaction with a police undercover informant. Detective Gregory testified that the undercover informant had provided the police on July 29, 1990 with information that drugs could be purchased from Anthony Smith. In the Detective's presence, the undercover informant telephoned Anthony Smith and asked him if he

would sell the informant some cocaine. According to the informant, Anthony Smith agreed. The informant told Detective Gregory that Anthony Smith agreed to meet him at a 7–11 store at midnight on July 29. The informant also informed the Detective that Anthony Smith would arrive in either a black Mercedes or a van.

Detective Gregory testified that Anthony Smith in fact arrived at the 7–11 store in the Vehicle at about 12:25 pm on July 30, 1990 and the informant entered the Vehicle to complete the transaction. The police then arrested Anthony Smith and seized the Vehicle. Pursuant to the arrest, the police searched Anthony Smith and found a package of a substance which later tested positive as cocaine. Anthony Smith was subsequently charged by a Grand Jury Indictment with Possession with the Intent to Deliver Cocaine, 16 *Del.C.* § 4716(b)(4), Maintaining a Vehicle for Keeping Controlled Substances, 16 *Del.C.* § 4755(a)(5), and Conspiracy Second Degree, 11 *Del.C.* § 512. He was scheduled to appear in Superior Court for arraignment on the above charges on February 27, 1991. He failed to appear and a Capias was issued which is still outstanding.

At the time of the arrest the police searched the Vehicle and found several documents in the glove compartment. These documents were admitted as evidence upon motion of the State and included:

1. A receipt dated May 30, 1990 from Bavarian Enterprises, Inc. of Harrisburg, Pa. (the automobile dealership that sold the Vehicle either to Claimant (as she maintains) or to Anthony Smith (as the State maintains). It referred to a $5,000.00 deposit and indicated a balance due of $10,900.00 to hold the Vehicle for two weeks with a "ship to" designation of "Anthony Smith" at the address of 29 E. 3rd Street, Wilmington, Delaware 19802;

---

**1.** Delaware Tag Number 53923, VIN Number WDBDA24C5FF040187.

**2.** The Court previously has treated the State's letter of September 13, 1990 to Theresa Smith as an application for forfeiture pursuant to 16

*Del.C.* § 4784(j), and has accepted Claimant's letter dated October 17, 1990 to the State as an application for the return of property pursuant to 16 *Del.C.* § 4784(j). (Letter Order of Judge Barron dated February 1, 1991, at 1).

2. An Odometer Disclosure Statement for the Vehicle dated June 4, 1990 bearing a signature of "Anthony Smith";

3. An undated envelope (with no postmark or stamp) from Bavarian Enterprises addressed to "Anthony Smith" at 29 E. 3rd Street, Wilmington, Delaware 19802;

4. A Temporary Registration Plate application for the Vehicle dated June 4, 1990 signed by "Anthony Smith";

5. A towing receipt, signed by "Anthony Smith", from B & F Towing dated 6/9/90, indicating that the car broke down in Philadelphia and was towed back to Delaware on that date;

6. An Insurance Identification Card for Claimant for a 1986 Buick with an effective date of 9/19/89 and an expiration date 9/19/90;

7. A Delaware Certificate of Title dated June 26, 1990 for the Vehicle in Claimant's name; and

8. A Delaware Motor Vehicle Registration Card issued June 26, 1990 in Claimant's name.

Detective Gregory, testifying as an expert on the practices of persons involved in drug dealing in New Castle County, stated that it is not uncommon for drug dealers to put the titles of cars in other persons' names in an effort to protect the cars from forfeiture.

Claimant testified that she was and is the owner of the Vehicle. She denied any such knowledge of the drug transaction on July 30, 1990 and the State concedes it has no evidence to show any knowledge of Claimant of that drug transaction.[3]

Claimant testified that she had picked the Vehicle out from a trading magazine and drove to Bavarian Enterprises in Harrisburg in Spring, 1990 with her brother to look at the car. Claimant stated on direct examination that she accompanied her brother at the first and second visit but not at the third and final visit. On cross examination she testified that she only traveled to Harrisburg with her brother on the first visit. She testified that her brother had traveled to Harrisburg a third time to pay the balance due on the car and to arrange for delivery. Claimant testified that the $13,500 that her brother used to pay for the Vehicle was her money and that although Anthony Smith went to Harrisburg to pay the seller, he did so only for the limited purposes of checking the car's mechanical condition and of bargaining for a better price.

Claimant testified that by May, 1990 she had accumulated a fund of money from 1) a previous personal injury settlement, 2) her (approximate) $19,000 then annual income, 3) her social security benefits paid to her daughter, and 4) support payments made for another daughter, from which fund the Vehicle was purchased. Claimant testified that although in 1990 she had a savings account with Delaware Trust Company, she would periodically withdraw money from that account and keep it in a safe in her house. Claimant stated that she had accumulated approximately $16,000 in cash in her safe by May of 1990 and that she used that money for the $5,000 initial deposit on the Vehicle as well as to purchase an $8,000 money order from the U.S. Post Office to pay the balance due on the Vehicle. Claimant offered no explanation as to the $500 difference between the $13,500 purchase price and sum of the $5,000 initial deposit and the $8,000 money order. She testified that she gave the money order to her brother who in turn went to Harrisburg to make the final purchase of the Vehicle.

Claimant testified that she and her brother resided in the same household at 29 E. 3rd Street, Wilmington, and that she loaned the Vehicle to him from time to time between its date of purchase on or about June 4, 1990 and July 30, 1990. Claimant stated that her brother performed routine maintenance on the Vehicle. Claimant further testified that although she lent the Vehicle to her brother on occasion, she was unaware the Vehicle was being used for any unlawful purpose.

---

3. 16 *Del.C.* § 4784(a)(4)(b) provides: "No vehicle is subject to forfeiture under this section by reason of any act or omission established by the *owner* thereof to have been committed or omitted without his knowledge or consent." (emphasis added). Here, however, the State maintains that Anthony Smith, not Claimant, was the "owner".

Certain documents were admitted as evidence upon motion of Claimant and included:

1. A receipt of Bavarian Enterprises dated June 4, 1990 for $13,500 indicating "Pd. in full" with a "ship to" designation of "Theresa Smith" at 29 E. 3rd Street, Wilmington, Delaware 19802;

2. An unsigned, undated automobile insurance application bearing Claimant's name reciting, *inter alia*, that Claimant would use the Vehicle "100%" of the time;

3. A receipt dated June 26, 1990 from the Delaware Division of Motor Vehicles for $294.00 for "Titles".

Claimant produced no documentary evidence to support her claims as to the source of funds for the Vehicle, such as a settlement statement from the alleged personal injury action, the Delaware Trust Company Savings Account records or the $8,000 U.S. Postal Service Money Order, nor did she otherwise explain why such documents were not produced.

On cross examination, Claimant stated that the Vehicle was a two-door car. After being asked by the Deputy Attorney General if she was sure of that fact, she then stated that it was a four-door car. Claimant could not remember whether the windows on the car were clear, tinted or smoked nor whether the Vehicle had any dents. Claimant was also unable to identify the type of tires (white wall or black wall) or any striping on the Vehicle, but said that such failure of recollection was due to the passage of time and the relatively short period of time that she had possessed the car. Claimant stated that she also owned a 1986 Buick Somerset which she had purchased in 1988 for $5,400.

In rebuttal testimony, Detective Gregory testified that the Vehicle has four doors, factory tinted windows, black striping and a noticeable dent in the passenger side fender.

## II. DISCUSSION

The issues to be determined by the Court are: (1) did the State meet its initial burden of showing "probable cause" for the institution of the forfeiture proceeding;[4] if so, (2) is Claimant the "owner" of the Vehicle; if so, (3) was Claimant without knowledge of the illegal transaction. 16 *Del.C.* § 4784; Super.Ct.Civ. Rule 71.3.

In 1990, the Delaware General Assembly enacted the "Forfeiture of Drug Profits Act" (hereinafter the "Act"). 16 *Del.C.* § 4784, *et seq.* This Act replaced Delaware's previous forfeiture statute. Section 4784(a) of the Act, a broad forfeiture provision, provides in pertinent part:

(a) The following shall be subject to forfeiture to the State and no property rights shall exist in them:

(1) all controlled substances which have been manufactured, distributed, possessed, dispensed or acquired in violation of this chapter;

(4) Any conveyances, including ... vehicles ... which are used, or are intended for use, to transport, or *in any manner to facilitate* the transportation, sale, trafficking in or possession with intent to deliver property described in paragraph 1 ... (emphasis added). 16 *Del.C.* § 4784(a)(1)(4).

Section 4784 of Title 16 is modeled closely upon the parallel Federal statute, 21 U.S.C. § 881(a). Since Delaware has little case law interpreting 16 *Del.C.* § 4784, this Court has previously looked to the federal courts for guidance. *In the Matter of: One 1987 Toyota,* Del.Super., 621 A.2d 796, Barron, J. (1992) ("[This Court will] apply the civil forfeiture standards [of 21 U.S.C. § 881(a) ]").

A. *"Probable cause" exists for the initiation of the forfeiture proceeding; the Vehicle was used to "facilitate" the offenses.*

 The federal courts have recognized that the key purpose of such forfeiture statutes is to cripple the trafficking and sale of

---

4. Although the Court ruled in favor of the State on the issue of probable cause to initiate the forfeiture action at trial, reserving decision on the issue of an ownership interest by Claimant, the Court will include in this opinion the applicable legal standards and the factual basis for the trial determination of the existence of sufficient probable cause.

illegal drugs. *United States v. One 1972 Datsun,* 378 F.Supp. 1200, 1205 (D.N.H. 1974). It is well settled that the government has the initial burden of proving that probable cause exists for the institution of a forfeiture proceeding.[5] *United States v. Premises Known as 3639–2nd St., N.E.,* 869 F.2d 1093, 1095 (8th Cir.1989); *United States v. Fleming,* 677 F.2d 602, 609 (7th Cir.1982); *United States v. One 1977 Lincoln Mark V Coupe,* 643 F.2d 154, 156 (3d Cir.1981), *cert. denied, Whitby v. United States,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). However, probable cause is given its ordinary meaning in this context. *United States v. One 1979 Mercury Cougar,* 666 F.2d 228, 230 n. 3 (5th Cir.1982) (holding that probable cause means more than "mere suspicion").

■ The probable cause standard for forfeiture is essentially the same as that applied in Fourth Amendment search and seizure cases. *In the Matter of: One 1987 Toyota, supra,* at 799. Generally, probable cause in a forfeiture action is "a reasonable ground for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion." *Id.* at 799. Therefore, the State must prove that a "reasonable ground" exists for the belief that the Vehicle was used to "facilitate" a sale, transportation or delivery of an illegal substance.

■ The test utilized by the Third Circuit for determining whether property is used to "facilitate" illegal activity is "whether there [is] a reasonable ground for belief that the use of the automobile made the sale less difficult and allowed [the sale] to remain more or less free from obstruction or hinderance." *One 1977 Lincoln,* 643 F.2d at 157 (quoting *United States v. One 1950 Buick Sedan,* 231 F.2d 219, 222 (3d Cir.1956)). This Court adopted the foregoing Third Circuit test in *In the Matter of One 1987 Toyota, supra,* at 800 (holding that such test was applicable to 16 *Del.C.* § 4784 "in light of the purposes of civil forfeiture actions and the modern day reality of increased drug-related crime").

■ As a threshold issue, Claimant argues that the State did not have the requisite probable cause for the forfeiture. In support of this argument, Claimant argues that (1) no drugs were found in the car, but rather on Anthony Smith's person, (2) the police expected that the defendant would arrive in a van or a black Mercedes, and (3) the police had never previously witnessed the defendant driving the Vehicle. In essence, Claimant argues that the Vehicle did not have a sufficient nexus with the transaction so as to make Delaware's forfeiture statute applicable. This argument misperceives the nature of Section 4784 of the Act.

Prior to the enactment of Section 4784, drug related forfeitures were accomplished pursuant to the prior provision of 16 *Del.C.*

---

**5.** Although the State bears the initial burden of proving probable cause to have initiated the forfeiture proceeding, it does not bear the burden vis a vis any given claimant unless the claimant asserts that the claimant has a legally cognizable interest in the property that will be injured if the property is forfeited to the State. *See United States v. $38,000.00 In United States Currency,* 816 F.2d 1538, 1544 n. 12 (11th Cir.1987). It is this claim of injury that confers upon a claimant the requisite "case or controversy" standing (as that term is used in the federal courts) to contest forfeiture. *Id.* However, a claimant need not *own* the property in order to have standing to contest its forfeiture; a lesser property interest, such as a lawful possessory interest, is sufficient for standing. *$38,000.00 In United States Currency,* 816 F.2d at 1543 (holding that standing under Article III of the U.S. Constitution requires only a possessory interest in the property).

A possessory interest requirement thus prohibits any "John Doe" from challenging the forfeiture of property by the State. Under Delaware law, a possessory interest in the seized property is required pursuant to 16 *Del.C.* § 4784(j)(1) which requires that the claimant first prove a "lawful possessory interest in the seized property". 16 *Del.C.* § 4784(j)(1). There is no corresponding provision in 21 U.S.C. § 881. The fact that Claimant in the instant case is the registered owner of the Vehicle is a sufficient possessory interest to confer standing. Super.Ct.Civ. Rule 71.3(c).

If the State had been unable to prove such probable cause, the Claimant would have a superior right to the Vehicle than the State. *Cf. Commonwealth v. One 1985 Dark Blue Mercedes Benz Car,* 391 Pa.Super. 507, 571 A.2d 482, 485 (1990) *appeal denied, Commonwealth v. One 1985 Dark Blue Mercedes Benz Car,* 526 Pa.Super. 654, 586 A.2d 922 (1990). Therefore, a claimant's proof of a possessory interest to confer standing to participate in the proceedings should not be confused with the proof of "ownership" required to succeed on the merits of an "innocent owner" defense under 16 *Del.C.* 4784(a)(4)(b).

§ 4784. The revised version of Section 4784 is broader than its predecessor. Specifically, the old provision did not contain the "in any manner to facilitate" language that currently exists in 16 *Del.C.* § 4784(a)(4). It has been held that an inference that arises from the enactment of "in any manner to facilitate" phraseology in forfeiture statutes is that a legislature intended thereby to expand the government's right to forfeiture in drug cases. *United States v. One 1981 Datsun 280ZX,* 563 F.Supp. 470, 473 (E.D.Pa.1983) (holding that Congress intended to expand the government's right to forfeiture by adding the "in any manner to facilitate" language). This inference belies Claimant's position that there was not a sufficient nexus with the Vehicle. Forfeiture is not limited to those situations where drugs are found in the vehicle itself; rather, it is sufficient if the vehicle is used to "facilitate the purchase, sale or transportation of a controlled substance or if it is intended" to be so used. *Id.* at 473.

 The facts of this case fall squarely within the statutory provision of Section 4784(a)(4) and the Third Circuit's test for "facilitation". The Vehicle was used by Anthony Smith to get to the meeting place (the 7–11 store), the purpose of which was to consummate the sale of cocaine. The informant and Anthony Smith discussed the sale of the cocaine in the Vehicle and the transaction took place in the Vehicle.[6] The Vehicle thus provided shelter and privacy for this phase of the transaction. Finally, Anthony Smith "intended" to use the Vehicle to transport the cocaine to the scene of the sale. Clearly, the Vehicle "made the sale less difficult and allowed it to remain more or less free from obstruction or hinderance". *One 1977 Lincoln,* 643 F.2d at 157.

The forfeiture of a motor vehicle has been upheld where the nexus between the vehicle and the transaction was much more attenuated than the nexus in the case at bar. In *United States v. One 1977 Cadillac Coupe de Ville,* 644 F.2d 500 (5th Cir.1981), a Cadillac

was used to transport the seller and her accomplice to the house where the sale was to occur. However, the Cadillac never carried the cocaine, which arrived in a different car. The claimant in *One 1977 Cadillac* challenged the forfeiture, arguing that since the cocaine was not transported in defendant's car, there was no "facilitation." *Id.* at 501. The Court disagreed holding that the transportation of the seller to the location of the sale was sufficient "facilitation." *Id.* at 503.

Also, in *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421 (2d Cir.1977), the vehicle was used only to transport the seller and the cocaine to an initial meeting to arrange a future transaction. At the conclusion of this meeting, no agreement was reached. The ultimate plan was formulated and agreed upon at a subsequent meeting. The Court held that the transportation to the one abortive meeting was sufficient for forfeiture, calling it "an integral part of the drug selling conspiracy." *Id.* at 423.

Given the broad language of Section 4784, as modeled after 21 U.S.C. § 881 (which has been accorded liberal construction by the federal courts), this Court concludes that the Vehicle in the instant matter had a sufficient nexus with the drug transaction so as to justify application of the forfeiture provision and that the State established probable cause for the initiation of the forfeiture proceeding.

B. *Claimant has not established herself as an "innocent owner."*

 Having determined that the State has demonstrated probable cause to have initiated the forfeiture proceeding, the burden then falls on Claimant to prove by a preponderance of the evidence that the Vehicle was unlawfully seized or that it is not subject to forfeiture. 16 *Del.C.* § 4784(j)(2); *United States v. One 1988 36 Foot Cigarette Ocean Racer,* 624 F.Supp. 290, 295 (S.D.Fla. 1985) (holding that once the government establishes probable cause, the burden shifts to

---

**6.** Some of the evidence put forth by the State in the "probable cause for the initiation of the forfeiture proceeding" phase of the trial was hearsay evidence, objected to by Claimant at trial. Hearsay statements are properly considered to

establish probable cause in a forfeiture proceeding. *United States v. Premises Known As 526 Liscum Drive,* 866 F.2d 213, 217 n. 3 (6th Cir. 1989).

third party claimant to prove a defense to the forfeiture). Claimant argues that the Vehicle is not subject to forfeiture because she is the "owner" of the seized Vehicle and that the unlawful transaction was committed without her knowledge or consent.[7] This defense to forfeiture has been termed the "innocent owner" defense. *Commonwealth v. One 1985 Cadillac Seville,* 371 Pa.Super. 390, 538 A.2d 71, 75 (1988).

In Delaware, the "innocent owner" defense is set forth in 16 *Del.C.* § 4784(a)(4)(b) and § 4784(j) which provide in pertinent part:

> (b) No Vehicle is *subject to forfeiture* under this section by reason of any act or omission established by the *owner* thereof to have been committed or omitted without his knowledge or consent. (emphases added)
>
> 16 *Del.C.* § 4784(a)(4)(b).

\* \* \* \* \* \*

> (j) Property seized pursuant to this section that is not summarily forfeited pursuant to subsection (f) of this section shall be automatically forfeited to the State upon application to the Superior Court if, ... the person or persons claiming title to the seized property do not institute proceedings in the Superior Court to establish:
>
> (1) That they have the *lawful possessory interest* in the seized property; and
>
> (2) The property was unlawfully seized or *not subject to forfeiture* pursuant to this section. (emphasis added).
>
> 16 *Del.C.* § 4784(j).

The question of whether a claimant is the "owner" of the vehicle for the purpose of raising the "innocent owner" defense presents an issue of apparent first impression in Delaware.[8] To establish ownership under 16 *Del.C.* § 4784(a)(4)(b), Claimant must demonstrate a ownership interest in the res with the attendant characteristics of dominion and control. *See United States v. One 1945 Douglas C-54 (DC-4) Aircraft,* 647 F.2d 864 (8th Cir.1981); *cert. den. Stumpff v. United States,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982). Certificate of title to a motor vehicle is generally presumptive evidence of ownership; however, this presumption is not conclusive. *State v. One 1968 Buick Electra,* Del.Super., 301 A.2d 297, 298 (1973). Accordingly, the possession of bare title to the res may be insufficient to establish ownership. *United States v. One 1982 Porsche 928,* 732 F.Supp. 447, 451 (S.D.N.1990).

The rationale for the rule that bare legal title may be insufficient is that appearances may be deceptive, especially in the world of drug trafficking. As recognized in *One 1982 Porsche 928,* 732 F.Supp. at 451, people involved in illegal activities, being aware of forfeiture statutes, often attempt to disguise their interests in property by not placing title in their own names. As a result, the question of "ownership" is a factual determination that looks beyond the formal title to determine whether the record owner is the "actual" owner or merely a "straw man" set up to avoid forfeiture. *Id.* at 451; *See*

---

**7.** The State characterized the issue of ownership of the Vehicle in terms of "standing" to contest the forfeiture, thus seemingly making it a "threshold" issue which would necessarily precede consideration of the existence of probable cause. See fn. 5. Although some federal courts have also characterized the issue of ownership of the potentially forfeitable res in terms of "standing", a careful reading of those cases discloses that the claimant sought the return of property which had *already* been shown to be subject to forfeiture by the government. *United States v. $280,505 Dollars,* 655 F.Supp. 1487 (S.D.Fla. 1986); *One 1981 Datsun,* 563 F.Supp. at 470.

The State in the instant case has shown that probable cause existed for the seizure of the Vehicle. For the purposes of future "innocent owner" cases under 16 *Del.C.* 4784 and Super.Ct.Civ. Rule 71.3, the Court concludes that a claimant must first demonstrate a colorable

"possessory interest" in the seized property to confer standing to challenge the forfeiture; if such interest exists then the State must prove that it has probable cause to forfeit the property. If the State establishes such probable cause, and if the claimant maintains that the property is not subject to forfeiture because the claimant is an "innocent owner" thereof, then the burden shifts to the claimant to prove by a preponderance of the evidence that claimant is the actual "owner" and that claimant had no knowledge of, nor gave consent to, the illegal act. 16 *Del.C.* § 4784(a)(4)(b).

**8.** Judge Barron expressly left undecided, since it was not before him, the "innocent third-party" issue in *In the Matter of: One 1987 Toyota, supra,* at n. 7.

*also $280,505 Dollars,* 655 F.Supp. at 1495; *One 1981 Datsun 280ZX,* 563 F.Supp. at 470.

Thus, in *$280,505 Dollars,* 655 F.Supp. at 1495, a case quite analogous to the case at bar, it was held that the claimant, named on the certificate of title with her son, was not the "owner" of the vehicle because she had no possession or control of the car and because she could not sufficiently document the source of the money used to purchase the car. The court found claimant's testimony implausible that she kept the money in a home safe even though she had a bank account. In addition, the court noted that it was the son who had paid the money to the seller and that it was the son who used the vehicle. The court found claimant to be a "straw" or "nominal" owner of the vehicle.

In *One 1985 Cadillac Seville,* 538 A.2d at 75, the court found that although the claimant produced documents of motor vehicle title and registration bearing her name, she was not the "owner" of the car because she failed to establish that she purchased the car with her own money for her own use. *Id.* The facts of *One 1985 Cadillac Seville* are also very similar to the instant facts. There, the claimant's brother had operated "her" Cadillac while conducting a drug transaction; he was arrested and the car was seized. The claimant alleged that she was an "innocent owner" and that she had bought the car for $30,000 cash. The court noted that the claimant had produced no documentary evidence showing any withdrawals of bank deposits or any other source of the cash allegedly used to buy the car. The court also noted that the trial court, sitting without a jury, was the sole judge of credibility and that the trial judge was not convinced by claimant's testimony.

In *One 1981 Datsun 280ZX,* 563 F.Supp. at 475, the court evaluated a claim of "innocent ownership" also analogous to the case at bar. There, a father was held not to be the "owner" a car used by his son to facilitate the attempted purchase of a controlled substance. The court found the father's claim of ownership to be without merit despite the fact that the vehicle's title and insurance were in the father's name. The court noted that there was confusion surrounding who

had paid for the car. Moreover, despite his limited income, the father had purchased another car shortly after the purchase of the Datsun. In arriving at its conclusion that the father was not, in fact, the owner, the court stated that an "inference that the car was not intended for claimant's use can be drawn from the facts." *Id.* at 475. This Court believes that a similar inference is properly drawn from the facts in the instant case.

In *United States v. One 1980 Blazer Automobile, VIN # CKL18AF111432,* 572 F.Supp. 994 (E.D.N.Y.1983) the Court found that the motor vehicle in question had been purchased with proceeds of a drug transaction and was therefore subject to forfeiture. The court held that the claimant (defendant's wife), even if she were found to have standing, had not demonstrated that the truck was purchased with legally obtained funds. The Blazer had been purchased for $10,583.50 from a leasing company by way of cash or certified check. Evidence was introduced that in previous years, the defendant had purchased two other vehicles from the same leasing company and had paid cash for them. Claimant contended, however, that she purchased the Blazer with proceeds of a $10,000 loan she obtained from her husband's grandfather before his death. No documentation (such as canceled checks or the grandfather's tax return) was introduced to support this theory. The court found important the "utter absence of any documentation supporting [claimant's] story about the loan." *Id.* at 997. Based on this lack of evidence and the fact that claimant bore the burden of proof, the court held that claimant's evidence was "far too evanescent to sustain her case." *Id.* This Court likewise finds it important that Claimant has failed to produce documentary evidence to support her claims regarding the source of the funds used to purchase the Vehicle.

Here, title to the Vehicle and the Motor Vehicle Registration card are in Claimant's name. However, there was sufficient evidence adduced at trial that Anthony Smith actually controlled the Vehicle, which rebuts the presumption invoked by Claimant of her ownership based on the Certificate of Title

and other documents bearing her name. Most of the documentation concerning the purchase of the Vehicle is signed by Anthony Smith or addressed to him. Claimant herself testified that her brother went to the dealership on three occasions and he paid for the Vehicle.[9] The June 4, 1990 receipt, indicating that the Vehicle was to be shipped to "Theresa Smith", does not, under all of the circumstances, sufficiently corroborate her claim to be the Vehicle's owner.

There is also evidence that once the Vehicle was purchased, Anthony Smith substantially controlled it. The towing receipt indicated that the Vehicle broke down in Philadelphia on June 9, 1990 while Anthony Smith was driving it. The police witnessed Anthony Smith driving the Vehicle before he was arrested. Claimant testified that her brother attended to its routine maintenance.

Claimant's testimony that the car was purchased with her money has not been sufficiently corroborated, and Claimant's testimony on critical issues is not found to be entirely credible. According to Claimant, she expended $18,900 during a two year period for the 1986 Buick Somerset and the Vehicle. Although Claimant maintained that her income in 1990 derived from a previous personal injury lawsuit settlement, her employment income, social security disability payments to her daughter, and support payments on behalf of another child, she produced no documentation whatsoever corroborating those alleged sources. Claimant's assertion that she periodically withdrew cash (accumulating approximately $16,000) from her savings account and that she kept it in her safe at home theoretically could have been supported by her savings account records; similarly, the $8,000 U.S. Postal Service money order could have been substantiated. Claimant produced no such supporting documenta-

tion despite the fact that the burden was on Claimant to prove ownership. Her testimony about her sources of income (as applied ultimately to the purchase of the Vehicle) was confusing.[10]

Claimant's credibility was not enhanced by her recollection of the Vehicle's physical characteristics. When Claimant was questioned by the State as to the characteristics of the Vehicle, Claimant was not certain at first whether the Vehicle was a two-door or a four-door model. In addition, Claimant did not know whether the Vehicle's windows were tinted, smoked, or clear. While the Court recognizes that the Vehicle has been in police custody since 1990, and that it had been purchased from Bavarian Enterprises only two months before its seizure by the police, it is doubtful that the owner of the Vehicle would not know with certainty how many doors it has. *Cf. United States v. One 1988 Honda Accord,* 735 F.Supp. 726 (E.D.Mich.1990) (concluding that claimant's inability to remember if the car had a 5–speed manual transmission or approximately how many miles were on the car was further evidence that claimant was not the true owner).

Further, although Claimant testified that her brother regularly used the Vehicle, nevertheless, on her application for automobile insurance she identified herself as intending to use the Vehicle "100%" of the time.

The Court finds Claimant's testimony insufficiently credible on critical issues, and her claims have not been sufficiently corroborated. Accordingly, the Court concludes Claimant has not carried her burden of showing by a preponderance of the evidence that she is the owner of the Vehicle; her evidence having failed to preponderate, the Court con-

**9.** Claimant testified on direct examination that she had gone to Bavarian Enterprises in Harrisburg on two occasions with her brother and that her brother had gone there on two more occasions alone. On cross examination Claimant stated that she had gone to Bavarian Enterprises on one occasion and that her brother had traveled there two times alone. No witnesses from Bavarian Enterprises were present at trial to corroborate Claimant's testimony, nor any satisfactory explanation offered for their absence.

**10.** The Court provided the State (then represented by another Deputy Attorney General) and Claimant with the opportunity for discovery prior to trial, but apparently neither the State nor Claimant engaged in any pre-trial discovery. (Letter Order of Judge Barron dated February 1, 1991, at 2).

cludes that she was a "straw owner" of the Vehicle.

### III. CONCLUSION

The Court concludes after hearing testimony and reviewing the exhibits that (1) the State established probable cause to have initiated the forfeiture proceeding and (2) Claimant has not met her burden of proving ownership. Consequently, the Court grants the State's petition for forfeiture and denies Claimant's petition for return of the Vehicle.

**IT IS SO ORDERED.**