# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **IN THE MATTER OF** | ) | |
| **$2500.00 US Currency** | ) | |
| | ) | |
| | ) | **C.A. No.: N17M-03-252** |
| | ) | |
| **Vernae Hargraves-Laws** | ) | |
| | ) | |
| Petitioner. | ) | |

## Upon Petition for Return of Property
### DENIED

Vernae Hargraves-Laws, *Pro Se*

Danielle Brennan, Esquire, Deputy Attorney General, Wilmington, Delaware for the State of Delaware

Mayer, Commissioner

This matter came before the Court upon a Petition for Return of Property pursuant to 16 Del. C. §4784(j) and Superior Court Civil Rule 71.3. Petitioner seeks the return of $2,000.00 in money/currency seized by the State of Delaware.[1] An initial hearing was held on August 17, 2017, at which time Petitioner requested a trial date, and after discovery was exchanged, trial proceeded on October 11, 2018. This is my decision after considering the presentations by the parties, the record, and the evidence presented at the trial.

## FINDINGS OF FACT

By way of background, prior to and on December 21, 2016, and in response to information from several confidential informants, law enforcement conducted surveillance of two residences, 2914 N. Claymont Street (the "2914 Address"), and Petitioner's apartment, based on suspicions that Terrance Williams was selling heroin out of these locations. During this period, law enforcement observed Mr. Williams conduct a suspected drug sale at or near the 2914 Address. In addition, they observed Mr. Williams coming and going from both residences. With respect to Petitioner's apartment, they began the surveillance at the very early morning hours, and did not observe Mr. Williams enter the unit, but did see him leaving at

---

[1] Although the Petition referenced approximately $2,500.00, prior to commencement of the trial, the parties presented a stipulation agreeing that $519.00 was the property of Terrance Williams and would not be subject to the pending proceedings.

2

approximately 9:19 a.m. Mr. Williams had a key to the residence and appeared to come and go freely. Mr. Williams is not named on the lease, and as a convicted felon, cannot be on the lease. Rather, the lease was solely in the name of Petitioner. In addition, there was a No Contact Order in place between Petitioner and Mr. Williams, and therefore, he should not have been at the residence. Although Petitioner denies that Mr. Williams was living at her home, Officer Rosiao testified that when she granted consent for the search, she acknowledged he had a key, that he comes and goes freely, he had belongings there, received mail in his name there, and she pointed to an upstairs bedroom as "our" room.

As a result of the surveillance between the two residences, it was believed that Mr. Williams was storing illegal drugs at the 2914 Address but storing the proceeds of his sales at the Petitioner's apartment. Officer Rosiao testified that based on his training and experience in the investigation of illegal drug activity, it is common practice for drug dealers to separate the drugs and cash in the event of a home invasion by a competitor or a police search. Mr. Williams was arrested the day of the search, and $519.00 in various denominations and stacks was found on his person. Officer Vasquez testified that this form of bundling is consistent with drug dealing, and in particular the sale of heroin. However, due to the large scale drug investigation of Mr. Williams, it was unusual for him to only have $519.00 available,

and law enforcement believed thousands would be more consistent with the quantity of illegal drugs at issue.

On December 21, 2016, at approximately 11:00 a.m., law enforcement conducted a consensual search of Petitioner's home. They searched an upstairs bedroom and found a bag in plain view with firearm magazines on top of a dresser.[2] Inside that dresser, law enforcement found a stack of cash totaling $2,000.00 with a rubber band around it. The stack of cash included: (a) five $50.00 bills; (b) sixty-eight $20.00 bills; (c) thirty-eight $10.00 bills; and (d) two $5.00 bills. Officer Rosiao testified that the bundling and denominations were consistent with drug dealing.

After the seizure of the cash, law enforcement secured the assistance of a K-9 handler, Officer Conine. Law enforcement set up a "test" to see if the dog, trained in drug identification, would alert to the association of illegal substances with the cash. Officer Conine explained how the test was performed, and that his K-9 alerted to sensing illegal drugs on the cash. Officer Conine testified that there is no statistical evidence of the K-9 having previously conducted false alerts.

---

[2] Petitioner pointed out that the two police reports are inconsistent with where and how the magazines were located. For purposes of this decision though, I accepted Officer Rosiao's testimony that he supervised the seizure of the magazines and where/how they were located.

4

Mr. Williams was arrested and a Notice of Forfeiture was provided to him acknowledging $2,519.00 in total was seized. Mr. Williams signed the document and agreed that the State had a right to seek forfeiture of the entire amount. Mr. Williams claimed that he was the owner of the property and did not indicate any of the seized cash belonged to Petitioner. Mr. Williams eventually plead guilty to certain drug dealing charges and agreed to forfeit the currency seized.

In support of the relief requested, the Petition claims the currency was "wages from employment" or "wkly pays" from Home Depot and Open Systems. Petitioner also testified on her own behalf that the $2,000 in cash was a result of (1) cashing a check she received from State Farm in the amount of $1,305.72; and (2) cashing pre-paid debit cards she received from her employers as a home health care aid. Petitioner provided a photograph of the State Farm check, but did not offer any copies of the check having been cashed, debit card receipts, or atm/bank records showing deposits and withdrawals. In addition, the State Farm check is dated December 21, 2016 – the same date as the search which began around 11:00 a.m. When questioned, Petitioner could not recall if she cashed the check prior to the search of the home. Petitioner also testified that the seized cash was set aside to pay bills, but was unclear how, or to whom, such a large amount of cash would be paid. Petitioner claimed she had a note tied around the cash indicating which household bills were to be paid, but no note was produced. Further, at the time Petitioner

granted consent for the search, Officer Rosiao testified he engaged Petitioner in a discussion about the cash. He prompted her to identify the amount and where it was located. Although he persisted in attempts to obtain information, Petitioner could not identify how much cash was in the home, where it was located, or from which bank she obtained the funds. Petitioner could not say if it was a few hundred dollars or a few thousand. Petitioner did not mention cashing any checks, debit cards, or savings to pay bills. Although Petitioner argued she could not get paperwork from her home, she was not prevented from entering the residence by law enforcement.

## CONCLUSIONS OF LAW

In Delaware, all moneys furnished or intended to be furnished, in exchange for a controlled substance in violation of Chapter 47 of the Uniform Controlled Substances Act, and all profits or proceeds traceable to a violation of this chapter, shall be subject to forfeiture to the State.[3] In a civil proceeding pursuant to 16 Del. C. §4784, the State has the initial burden of proving probable cause for forfeiture of the seized items.[4] The State must show that there are reasonable grounds for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion, and that the money was furnished or intended to be furnished in exchange for illegal

---

[3] 16 Del. C. §4784(a)(7).

[4] *Brown v. State*, 721 A.2d 1263, 1265 (Del. 1998).

substances, or the profits or proceeds of sales related thereto.[5] If the State meets this burden, the burden shifts to the petitioner to prove by a preponderance of the evidence that the property is not subject to forfeiture.[6] Petitioner must then prove that (1) she had a possessory interest in the property; and (2) the property was unlawfully seized or was not subject to forfeiture pursuant to this section.[7]

First, based on the totality of the evidence before the Court, I find that the State has met its burden of establishing that the seized funds were related to drug sales and criminal activity. "The government need not trace the cash to specific transactions, or actually prove by a preponderance of evidence a substantial connection to drug dealing. The government must merely furnish probable cause, i.d., reasonable grounds to believe that a substantial connection exists between the money seized and...drug dealing..."[8]

The totality of the circumstances demonstrates that there was a reasonable belief that the cash was associated with criminal activity. The officer surveilled Mr.

---

[5] *See In the Matter of One 1985 Mercedes Benz Auto.*, 644 A.2d 423, 428 (Del. Super. 1992).

[6] *Brown v. State*, 721 A.2d at 1265; *In re Matter of One Mercedes Benz Auto.*, 644 A.2d at 429-430.

[7] 16 Del. C. §4784(j).

[8] *In the Matter of $5,662 United States Currency*, 714 A.2d 106, 112-113 (Del. Super. 1998), quoting *U.S. v. $41,305.00 in Currency and Traveler's Checks*, 802 F.2d 1339, 1343-1344 (11th Cir. 1986).

Williams coming and going freely from the two residences. Mr. Williams was subjected to a No Contact Order and prohibited from residing at Petitioner's apartment. Despite this, he had a key, maintained belongings there, received mail in his name there, and law enforcement did not see him enter on the day in question, implying he resided there overnight. Coupled with the information from the confidential informants, the observance of a drug sale, the seizure of illegal drugs at the 2914 Address, Mr. Williams' criminal conviction history, and the officers' testimony regarding the large scale drug investigation and bundling of cash, there was a sufficient basis to believe the $2,000.00 was connected to criminal activities.

Next, I find that the Petitioner has standing to pursue this matter. The cash was found in an apartment leased in her name, and there is no dispute that she lived there and provided consent to search. Therefore, Petitioner had a sufficient possessory interest in the property.[9] With respect to the second part of the test though, I do not find that the property was unlawfully seized, nor has Petitioner met her burden of persuasion that the property is not subject to forfeiture. In claiming the money, the Petitioner was expected to "show by a preponderance of the evidence an alternate source for the funds," which requires more than just a possibility of a

---

[9] *In re Matter of One Mercedes Benz Auto.*, 644 A.2d 423, at fn. 5, citing *$38,000.00 in United States Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987) (recognizing that a claimant need not own the property to have standing to contest its forfeiture, but rather a lawful possessory interest is sufficient).

legitimate source for the cash.[10] Petitioner (1) did not provide sufficient evidence that the cash was related to legitimate non-criminal sources; (2) was unable to explain to the officer at the time of the search how much cash was in the home, where, and why; (3) provided inconsistent sources for the funds through her Petition in contrast to her trial testimony; (4) was vague and unable to testify convincingly about the alleged cashing of the State Farm check; and (5) provided no proof of ownership of the funds. Mr. Williams claimed the funds as his own and agreed to forfeit the currency as part of his plea agreement. Under the circumstances, it is more likely than not that the cash belonged to Mr. Williams and was part of drug dealing activities. In light of the evidence before the Court, Petitioner has failed to rebut the presumption in favor of forfeiture and the Petition for Return of Property is DENIED.

IT IS SO ORDERED this _19th_ day of _October_, 2018.

KATHARINE L. MAYER,
*Commissioner*

cc:  Original to Prothonotary
     Vernae Hargraves-Laws
     Danielle J. Brennan, Esquire

---

[10] *In the Matter of $5,662 United States Currency*, 714 A.2d at 113.